CRAIG BOULANGER *vs.* DUNKIN' DONUTS INCORPORATED.

Norfolk. May 4, 2004. - October 1, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Contract,* Agreement not to compete, Franchise agreement.

A Superior Court judge did not err in holding that covenants not to compete signed by the plaintiff as part of his franchise agreements with the defendant were enforceable, where, in the circumstances of the case, giving due consideration to the fact that the defendant franchisor was protecting the very franchise system from which the plaintiff franchisee himself benefited, the covenants not to compete were necessary to protect a legitimate business interest (the protection of confidential information), reasonably limited in time and space, and consonant with the public interest [639-646]; further, where the covenants not to compete were reasonable, the judge did not err in entering judgment for the defendant on the plaintiff's claims under G. L. c. 93A and the common law [647].

CIVIL ACTION commenced in the Superior Court Department on July 16, 2002.

The case was heard by *Patrick F. Brady,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Kevin R. McCarthy* for the plaintiff.

*Robert A. Murphy* (*Matthew L. Lunenfeld* with him) for the defendant.

*Steven K. Fedder,* of Maryland, *Bruce E. Falby, Lewis G. Rudnick, & Lee J. Plave,* for International Franchise Association, amicus curiae, submitted a brief.

IRELAND, J. This case raises an issue of first impression: whether covenants not to compete are enforceable where they stem from franchise agreements. The plaintiff, a former owner of Dunkin' Donuts franchises located in upstate New York, signed covenants not to compete as part of his franchise agreements with the defendant, Dunkin' Donuts Incorporated (Dunkin' Donuts). In relevant part, the agreements restricted the

plaintiff, inter alia, from owning or working for a competing business within five miles of any Dunkin' Donuts establishment, for two years after the expiration or termination of the agreements. We granted the plaintiff's application for direct appellate review to consider whether a Superior Court judge erred where, after a bench trial, he held that the covenants not to compete did not violate Massachusetts law. Because we conclude that, in the circumstances of this case, giving due consideration to the fact that Dunkin' Donuts was protecting the very franchise system from which the plaintiff himself benefited, the covenants not to compete were reasonable, we affirm the judgment.

*Facts and procedural background.* We present the relevant facts as found by the judge, supplementing them as necessary, and reserving certain details for our discussion of the issues.

The defendant is a worldwide franchisor of doughnut and coffee shops[1] that contracts with independent business persons who use the trade names, trademarks, recipes, and system developed by the defendant. The defendant interfaces with its franchisees through business consultants who organize and conduct district meetings several times a year. The defendant also allows certain high-performing franchisees to enter into a territorial development program whereby, for a fee, the defendant sets aside a particular territory for the franchisee, and the franchisee is expected to locate and develop potentially favorable sites for additional franchised shops.

The plaintiff began working as an employee for a Dunkin' Donuts franchise in the late 1970's. He worked his way up, eventually becoming a general manager in charge of several franchises owned by another franchisee. The judge found that in August, 1996, the plaintiff purchased his own franchise from the defendant, in Syracuse, New York.[2] The franchise agreement contained a clause (Section 8) which states in relevant part:

"During the term of this Agreement . . . and for a period of two (2) years after the expiration or termination

---

[1]Dunkin' Donuts is owned by Allied Domecq, PLC.

[2]The plaintiff operated under the name Upstate Donuts, Inc., and purchased the franchise with a partner. Although both the plaintiff and his partner signed relevant documents, we mention the partner only when necessary.

of this Agreement, regardless of the cause of the termination . . . [the] FRANCHISEE . . . shall [not] . . . own, maintain, engage in, be employed by, or have any interest in any other business which sells or offers to sell the same or substantially similar products to the type offered by Dunkin' Donuts shops; provided that, during the [two-year period] only, the provisions of this paragraph

. . . shall not apply to another business located more than five (5) miles from this or any other Dunkin' Donuts shop"[3] (covenant not to compete).

The defendant does not negotiate changes to the standard franchise agreement with any new (or existing) franchisees.

Although only franchisees are required to sign a covenant not to compete, all employees are bound by a Code of Ethics (code) requiring them to keep confidential information they learned while employed.[4] There are a number of other documents by which the defendant informs a franchisee that the franchisee will become privy to information that must be held in confidence. They include the uniform franchise offering circular (sent to prospective franchisees), the franchise agreement itself, the development program deposit agreement (signed when a franchisee wants to reserve a certain territory for expansion of franchises), and a cover letter that accompanies certain operating manuals. When a franchisee sells a store, the franchisee is required to acknowledge possession of confidential and proprietary information that the franchisee is willing to sell to the purchaser. The plaintiff signed a number of documents by which he acknowledged the proprietary and confidential nature of the information he was acquiring. The plaintiff purchased two other Dunkin' Donuts franchises in March, 1999, and October, 2000, signing franchise agreements containing covenants similar to the covenants he executed in 1996. He was

[3]Under the franchise agreements, the defendant reserved the right to open other franchises in the area of the franchisee's shop, even if it competed with the franchisee's business.

[4]At trial, two versions of the Code of Ethics were entered in evidence, one from 1999 and the other from 2002. The 2002 document was called the Code of Conduct. For simplicity, we shall refer to both as the code.

represented by counsel when he signed each of the franchise agreements containing the relevant covenants. In February, 2002, the plaintiff sold his three franchises to a third party.[5] In July, 2002, the plaintiff moved to New Hampshire.

Shortly thereafter, before the covenant not to compete[6] expired, the plaintiff contacted the corporate offices of Honey Dew Donuts and had an opportunity either to be an employee of Honey Dew or to own a franchise. However, when it learned of the plaintiff's covenant with the defendant, Honey Dew Donuts declined to talk to him further. The defendant refused the plaintiff's request to waive the covenant not to compete, and the plaintiff sued.

The plaintiff sought a declaratory judgment (G. L. c. 231A, § 1) that the covenant not to compete was unenforceable regarding both the plaintiff's employment by, and his opening of, a competing business in Massachusetts and New Hampshire. He asked for damages pursuant to G. L. c. 93A, § 11, claiming that the defendant wilfully and knowingly engaged in an unfair trade practice and unfair method of competition. He also claimed that the covenant was unfair under common law. The Superior Court judge issued his order for judgment in June, 2003. The covenant is no longer in effect, having expired in February, 2004.

---

[5]According to the plaintiff, he sold his franchises when he ran into some difficulty with two of his franchise stores. The plaintiff's partner wanted to leave the business and the plaintiff did not have the money to buy him out, nor could he find another partner. The plaintiff also stated that he did not agree with the defendant about the development of one of the stores. The defendant wanted the store to include a Baskin Robbins (ice cream) and a Togo (sandwiches), as well as Dunkin' Donuts.

The plaintiff and his partner grossed over $1 million from the sale of their franchises. The plaintiff testified that they each "walk[ed] away" with $72,000 after all the bills and expenses were paid.

When he sold his franchises, the plaintiff's agreement with the buyer included a covenant not to compete with the buyer for five years in the area of his former franchises. The defendant had to approve the sale, as it approved all sales by its franchisees, including the sale of the first franchise the plaintiff purchased from another franchisee.

[6]Although there were three covenants not to compete, we shall refer to them in the singular.

*Discussion.*[7] We accept a judge's findings of fact and legal conclusions unless they are clearly erroneous or tainted by error of law. *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 674 (1977).

1. *Covenants not to compete.*[8] A covenant not to compete is enforceable only if it is necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest. See *Marine Contrs. Co.* v. *Hurley*, 365 Mass. 280, 287-288, 289 (1974); *All Stainless, Inc.* v. *Colby*, 364 Mass. 773, 778 (1974). Covenants not to compete are valid if they are reasonable in light of the facts in each case. See *Marine Contrs. Co.* v. *Hurley, supra* at 287; *Saltman* v. *Smith*, 313 Mass. 135, 145 (1943). Historically, covenants not to compete typically have arisen in either the employment context or in the context of the sale of a business. See, e.g., *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85 (1979) (sale of business); *Marine Contrs. Co.* v. *Hurley, supra* (employment); *All Stainless, Inc.* v. *Colby, supra* (employment); *Alexander & Alexander, Inc.* v. *Danahy*, 21 Mass. App. Ct. 488 (1986) (sale of business). In the context of the sale of a business, courts look "less critically" at covenants not to compete because they do not implicate an individual's right to employment to the same degree as in the employment context. See *Alexander & Alexander, Inc.* v. *Danahy, supra* at 498, citing *Whitinsville Plaza, Inc.* v. *Kotseas, supra* at 102-103, and *Wells* v. *Wells*, 9 Mass. App. Ct. 321, 323-325 (1980). Moreover, in the context of the sale of a business, courts are less concerned with unequal

---

[7]The court solicited amicus briefs in this case and we acknowledge receipt of the amicus brief from the International Franchise Association. We grant the defendant's motion to strike the amicus brief of the American Association of Franchisees and Dealers and American Franchisee Associations.

We acknowledge, but need not address, every argument made by the plaintiff and defendant.

[8]We reject the plaintiff's representation, offered with no citation to any authority, that because the defendant was not a "party" to the sale of his franchises, the defendant cannot enforce the covenant not to compete.

We also reject the defendant's argument that, because the two-year restriction in the covenant not to compete has passed, the plaintiff's challenge is moot. In addition to his claim for a declaratory judgment, the plaintiff sought to recover damages for alleged wrongful refusal to excuse him from his covenant not to compete.

bargaining power between the parties. *Wells* v. *Wells, supra* at 324. Rather, courts consider whether "the parties entered into the agreement with the assistance of counsel and without compulsion (an element frequently not present in the employer-employee context)." *Wells* v. *Wells, supra* at 324-325, and cases cited. Courts in other jurisdictions have concluded that a covenant not to compete in a franchise agreement does not fit neatly into existing standards for reviewing such covenants. See, e.g., *In re KBAR, Inc.*, 96 B.R. 158, 159-160 (Bankr. C.D. Ill. 1988), and cases and authorities cited. However, many courts analogize such covenants either to employment covenants or sale of business covenants. For cases that have used the sale of business analogy, see, e.g., *Wilkinson* v. *Manpower, Inc.*, 531 F.2d 712 (5th Cir. 1976); *Jiffy Lube Int'l, Inc.* v. *Weiss Bros.*, 834 F. Supp. 683 (D.N.J. 1993). For cases that have used the employment analogy, see, e.g., *Novus Franchising, Inc.* v. *Taylor*, 795 F. Supp. 122 (M.D. Pa. 1992); *O.V. Mktg. Assocs., Inc.* v. *Carter*, 766 F. Supp. 960 (D. Kan. 1991); *South Bend Consumers Club, Inc.* v. *United Consumers Club, Inc.*, 572 F. Supp. 209 (N.D. Ind. 1983), appeal dismissed, 742 F.2d 392 (7th Cir. 1984).

We conclude that, in light of the facts in this case, the covenant in the franchise agreement is more akin to a sale of business covenant. The plaintiff was not the defendant's employee. The franchise agreement itself specified that the plaintiff, as a franchisee, was an independent contractor. The defendant maintained an advisory relationship with the plaintiff. See generally *DAR & Assocs., Inc.* v. *Uniforce Servs., Inc.*, 37 F. Supp. 2d 192, 197 (E.D.N.Y. 1999) (license agreement); *Sentilles* v. *Kwik-Kopy, Corp.*, 652 So. 2d 79, 82-83 (La. Ct. App. 1995) (franchisees were not employees). The plaintiff had to pay to obtain his franchise. Moreover, as the trial judge found, the plaintiff entered into his agreement and its attending covenants with his eyes wide open. He was represented by counsel. See generally *Alexander & Alexander, Inc.* v. *Danahy, supra* at 501 (covenant not to compete analyzed as sale of business where defendant, who was former shareholder of insurance firm, sold assets to plaintiff and entered into agreement freely, with substantial consideration and with benefit of counsel).

In addition to the obvious right to use Dunkin' Donuts confidential information and trademarks (discussed below), and to receive profits from his franchise, the plaintiff received other consideration. For example, he received long-term contracts of association with Dunkin' Donuts,[9] and protection from competition from former Dunkin' Donuts franchisees under the terms of the very covenant not to compete he now challenges. The plaintiff voluntarily terminated the franchise agreements, profiting by $72,000. See note 6, *supra.* See also *Zapatha* v. *Dairy Mart, Inc.*, 381 Mass. 284, 294-297 (1980) (noting that franchisee did not suffer potential loss of his investment because Dairy Mart repurchased inventory; termination provision was not obscurely worded or buried in fine print and there was no deception in Dairy Mart's introductory brochure). All of these facts support our conclusion that the franchise agreement was akin to a sale of business. Moreover, there are no factors that indicate that the plaintiff was treated unfairly. Cf., e.g., *Kroeger* v. *Stop & Shop Cos.*, 13 Mass. App. Ct. 310, 315 (1982) (holding covenant not to compete for key executive's lifetime tied to deferred compensation agreement was too broad only where company fired executive, without cause, seven years before anticipated retirement at age sixty-five).

We turn now to an analysis whether there was a legitimate business interest and whether the covenant's restrictions were reasonable and consonant with public policy.

a. *Legitimate business interests.* Legitimate business interests include protection of trade secrets, confidential information, and good will. *Marine Contrs. Co.* v. *Hurley*, *supra* at 287. A covenant not to compete designed to protect a party from ordinary competition does not protect a legitimate business interest. *Id.* Any good will was already protected in the geographically limited covenant not to compete the plaintiff signed with the buyer of his franchises. See note 5, *supra.*[10] However, this case involves more than an issue of good will. Here, the defendant had an interest in protecting confidential

---

[9]The contracts were for sixteen years for the first franchise and twenty years for the other two franchises.

[10]We leave open the question whether, in different circumstances, good will could extend beyond the area around a particular franchise.

information. The judge found that the defendant's confidential information included operating manuals and similar information contained in videotapes, CD-ROMs, and websites; recipes for coffee and baked goods; financial information and data; marketing and promotion strategy; new product development; and the location of sites for new stores and building plans. The judge also found that district meetings were held several times a year, often involving the dissemination of confidential information such as financial data and profitability of particular stores, new product development, and marketing and promotion strategies. As discussed, the judge found that the plaintiff signed numerous documents acknowledging the confidential nature of the information he received.

Nevertheless, the plaintiff argues that the information was not truly confidential because parts of the meetings were open to employees other than franchisees. We disagree. On conflicting testimony, the judge found that some meetings were closed to employees other than franchisees. Furthermore, one witness said that only franchisees received binders containing information concerning sales in a district. In addition, the plaintiff himself testified that, at marketing, as opposed to district, meetings only franchisees would participate.[11] We see no error in the judge's conclusion that, although the defendant may not have done all it possibly could have to guard the secrecy of the information, the information was nevertheless confidential. Cf. *Jet Spray Cooler, Inc.* v. *Crampton*, 361 Mass. 835, 843 (1972), S.C., 377 Mass. 159, 165 (1979); *J.T. Healy & Son* v. *James A. Murphy & Son*, 357 Mass. 728, 738 (1970); *Woolley's Laundry, Inc.* v. *Silva*, 304 Mass. 383, 386-390 (1939). Here, the judge did not err when he found that the plaintiff possessed "a substantial amount of information that is confidential [and] proprietary."

The plaintiff also argues that it is significant that the Dunkin' Donuts corporate employees, who also had access to the same

---

[11]Moreover, when the plaintiff sold his franchises, his asset purchase agreement acknowledged that the buyer was receiving, among other things, "proprietary intellectual property" set out in the franchise agreement between the plaintiff and the defendant. Only the plaintiff and the buyer were parties to that agreement.

information as he did, were not required to sign a covenant not to compete. We disagree. All employees were bound by the defendant's code. Moreover, the fact that the defendant does not require all employees to sign a covenant not to compete is not relevant, because the defendant may reasonably decide which persons pose the greatest risk of using its confidential information competitively, and can reasonably conclude that all franchisees pose such a risk. In fact, the plaintiff did contact Honey Dew Donuts about a franchise within a short time after selling his franchise.[12]

b. *Reasonable limits on time and space.* Although a business may protect its legitimate business interests, a covenant not to compete must be no more restrictive than necessary. *Marine Contrs. Co* v. *Hurley, supra* at 287-288. The plaintiff does not challenge the covenant's two-year limit. In any event, it is reasonable. See, e.g., *Marine Contrs. Co.* v. *Hurley, supra* at 288-290; *All Stainless, Inc.* v. *Colby,* 364 Mass. 773, 777 (1974); *Edgecomb* v. *Edmonston,* 257 Mass. 12, 21 (1926); *Wells* v. *Wells,* 9 Mass. App. Ct. 321, 327 (1980). Accordingly, we focus on whether a geographic limit of five miles from any other Dunkin' Donuts store is reasonable in the circumstances.

The defendant admitted that, in 2002, its franchisees operated approximately 1,400 stores outside the United States and approximately 3,700 stores in the United States, with approximately 704 stores in Massachusetts and 122 in New Hampshire. The plaintiff argues that the five-mile, essentially worldwide, geographic limit hampers his liberty to be

---

[12]The plaintiff argues that, because other provisions of the franchise agreements require the plaintiff to protect confidential information, the covenant is unenforceable because it goes beyond what is necessary to protect the defendant's legitimate business interests. The defendant argues that this argument is waived because the plaintiff makes it for the first time on appeal. The plaintiff's argument has no merit in any event. There is no legal reason the defendant cannot require franchisees to be bound by both a confidentiality agreement and a (reasonable) covenant not to compete. Moreover, working for a competitor of the defendant makes it likely that the information the plaintiff possesses will be used, yet it might be impossible to detect or prove. See generally *Marcam Corp.* v. *Orchard,* 885 F. Supp. 294, 297 (D. Mass. 1995) (former employee will inevitably draw on special knowledge acquired during employment even if former employee made "scrupulous efforts" to avoid disclosing confidential information).

employed.[13] He also argues that it is unreasonable to restrict his right to be employed by or own a competitive business in New Hampshire or Massachusetts.[14]

Although Massachusetts has no decided cases concerning franchises in these particular circumstances, in other contexts the court has "rejected a rule which would arbitrarily limit the restriction to the geographical area of the place of employment." *Novelty Bias Binding Co.* v. *Shevrin*, 342 Mass. 714, 718 (1961), citing *New England Tree Expert Co.* v. *Russell*, 306 Mass. 504, 510-511 (1940). Even applying the less liberal interpretation of covenants not to compete in the employment context, cases have held that restrictive covenants can apply to large geographic areas. See, e.g., *Marine Contrs. Co.* v. *Hurley, supra* at 289 (covenant not to compete covering area within one hundred miles of Boston reasonable); *Novelty Bias Binding Co.* v. *Shevrin, supra* at 714, 717-718 (covenant not to compete covering twenty-six named States, signed as part of defendant's restitution in criminal case, not unreasonable). Cf. *All Stainless, Inc.* v. *Colby, supra* at 777, 779-782, and cases cited (where salesman not in possession of confidential information, not reasonable for covenant not to compete to restrict him beyond his former sales territory). Moreover, where there is a sale of a business, geographic areas can be larger than in an employment context. See *Alexander & Alexander, Inc.* v. *Danahy*, 21 Mass. App. Ct. 488, 496 (1986); *Wells* v. *Wells, supra* at 326, and cases cited (with sale of business, "reasonable interest which a buyer may protect" expands).

Given that, even in the employment context, large geographic areas are deemed reasonable in some circumstances, we reject the plaintiff's argument that the portion of the covenant not to compete that prohibits his employment by a competitor in the five-mile area of a Dunkin' Donuts implicates a liberty right. The covenant not to compete did not prohibit employment altogether. Moreover, nothing precluded the plaintiff from work-

[13]We note that the plaintiff stated that he would have signed a franchise agreement with Honey Dew Donuts that contained a similar covenant: one year and within three miles of any then-existing Honey Dew Donuts shop.

[14]This argument concerns good will. As discussed, we conclude that more than good will is at stake in this case.

ing at another Dunkin' Donuts, albeit in a different capacity, during the duration of the covenant. See, e.g., *Marine Contrs. Co.* v. *Hurley, supra* at 289-290 (one hundred-mile covenant not to compete enforceable where employee freely entered into covenant and where employee may engage in other employment and did not demonstrate extraordinary hardship because "[t]he consequence of every covenant not to compete, however, is that the covenantor is deprived of a possible means of earning his living, within a defined area and for a limited time").

As discussed, the plaintiff walked away from his franchises with a profit. He also admits that after he sold his franchises, the defendant offered to place him in another Dunkin' Donuts franchise if he could finance it. See *Alexander & Alexander, Inc.* v. *Danahy, supra* at 496 (in context of sale of business, covenant not to compete proper because seller receives proceeds from business). See also *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 102 (1979) (no concern for preserving individual's livelihood where covenant restrained business entity not individual; covenants "not rendered unenforceable merely because they protect an interest we might not recognize in any employment setting").[15]

In these circumstances, we conclude that the five-mile limit is reasonable, not only because a number of our cases have held larger geographic areas to be reasonable, but also because we agree with the judge (and the defendant) that what the covenant not to compete was protecting was the defendant's franchise system. The issue is whether confidential information could be used by the plaintiff to harm other franchisees in other locations. The system is reasonable because it binds all other franchisees and is part of what the defendant sells. The system is part of what the plaintiff, as a franchisee, purchased and what protected him while he was a franchise owner. This conclusion is consonant with the principle that "a seller of a business interest may not derogate from the value of the business as sold by

---

[15]The plaintiff argues, despite this case history, that the five-mile limit is unreasonable in terms of space. We disagree. We have examined cases from other jurisdictions concerning covenants not to compete that extend beyond the area of the former franchise. None has these precise facts, and their conclusions are mixed.

competing with it . . . [because] the buyer is entitled to the full value of the 'benefit and advantages' of his purchase" (citations omitted). *Wells* v. *Wells, supra* at 324, citing *Auslyn, Inc.* v. *Rousseau,* 321 Mass. 735, 736 (1947). See generally *Alexander & Alexander, Inc.* v. *Danahy, supra* at 496. See also *Casey's General Stores, Inc.* v. *Campbell Oil Co.,* 441 N.W.2d 758, 761 (Iowa 1989); *Sentilles* v. *Kwik-Kopy Corp.,* 652 So. 2d 79, 83 (La. Ct. App. 1995); AmeriSpec, Inc. *vs.* Metro Inspection Servs., Inc., No. 3:01-CV-0946-D (N.D. Tex. July 3, 2001).[16]

For these reasons, there was no error in the judge's finding that the covenant not to compete was reasonable in part because other franchisees who sign identical restrictions in their franchise agreements "have a right equitably to enforce" the covenant.

c. *Public interest.* The plaintiff argues that the covenant not to compete harms the public interest in liberty of employment by essentially preventing the plaintiff from earning a living. We disagree. Our opinion has already addressed this point and it need not be repeated here. See generally *Sherman* v. *Pfefferkorn,* 241 Mass. 468, 472, 474, 475 (1922), quoting *Nordenfeldt* v. *Nordenfeldt Guns & Ammunition Co.,* [1894] A.C. 535, 565 ("public have an interest in every person's carrying on his trade freely"; employee's three-year, within three towns, covenant not to compete reasonable). Cf. *Economy Grocery Stores Corp.* v. *McMenamy,* 290 Mass. 549, 551, 553 (1935) (employee's covenant not to compete unenforceable where employee fired without cause, after employee alone built up employer's meat business and where public interest would be harmed during Depression if employee prevented from securing employment).

---

[16]As part of his argument concerning the reasonableness of the covenant not to compete, the plaintiff argues that the covenant is unenforceable because it is a contract of adhesion that is vague and overbroad. It is true that the defendant does not negotiate the standard franchise agreement. The defendant argues that this is because uniformity is necessary for a successful franchising system.

We assume, without deciding, that this was a contract of adhesion, but conclude that the agreement is not unconscionable, does not offend public policy, and is not unfair in the circumstances. See *Chase Commercial Corp.* v. *Owen,* 32 Mass. App. Ct. 248 (1992).

2. *G. L. c. 93A and common-law claims.* Because we conclude that the covenant not to compete is reasonable, it follows that the judge did not err in entering judgment for the defendant on the plaintiff's claims under G. L. c. 93A and the common law.

*Conclusion.* For the reasons set forth above, we conclude that, in the circumstances of this particular case, the franchise agreement's covenant not to compete is reasonable.

*Judgment affirmed.*