Botsford, J.
Up to 9:00 p.m. on December 15, 2004, all of the individual defendants were employed by the plaintiff Acordia Northeast, Inc. (Acordia). Acor-dia is an insurance brokerage firm, an affiliate of Wells Fargo Bank, N.A., with a principal place of business in Boston, Massachusetts. Most of the individual defendants were part of the “Higher Education Team” (higher education team) that was led by the defendant Bonney Hebert, and that provides insurance brokerage and risk management services to colleges and universities. The defendant Academic Risk Resources & Insurance, LLC (Academic Risk) is a limited liability company formed on or about December 1, 2004. Academic Risk is in the same insurance brokerage and risk management business as the higher education team of Acordia. As of December 15, 2004, all the individual defendants left Acordia, and are now employed by Academic Risk. Acordia claims that the individual defendants have been soliciting and continue to solicit the college and university insurance clients in violation of fiduciary duties owed to Acordia and also contrary to the provisions of non-solicitation agreements that all but one of them signed. Because of such alleged conduct, Acordia seeks preliminary injunctive relief to bar the defendants from using any of Acordia’s confidential and proprietary information that Acordia alleges the defendants have taken with them, and from soliciting business from or servicing any of the Acordia clients or prospects that any of them provided or actively sought to provide insurance-related products or services to since December 15,2003. The defendants oppose the request for injunctive relief.
A hearing on Acordia’s motion was held on December 30, 2004. The plaintiff and the defendants all appeared through counsel, and both sides filed mem-oranda and affidavits supporting their respective positions. As I indicated at that time, because another judge will have responsibility for this case going forward, I have treated the motion as one seeking a temporary restraining order, to allow both sides to argue again before the appropriate judge.[2] On December 31, 2004,1 granted a temporary restraining order to Acordia. This memorandum briefly explains the reasons.

Background

The filings in support of the motion for preliminary injunctive relief indicates the following.
Acordia hired Hebert originally in 1999 as a senior vice president in order to establish a higher education team to provide insurance brokerage and risk management services to colleges and universities. Hebert’s original salary was $159,000 plus commissions, but as of June 1, 2000, her annual salary was increased to $220,000, with commissions.
Hebert signed a non-disclosure and anti-piracy agreement as a condition of employment, which also includes a non-disclosure provision. This agreement provides in relevant part as follows.
“1.3 Non-Disclosure. The Employee shall not without the prior written consent of the Chief Executive Officer of the Corporation (i) use for Employee’s benefit or disclose at any time during Employee’s employment by the Corporation, or thereafter, . . . any information obtained or developed by Employee while in the employ of the Corporation with respect to any customers, suppliers, products, employees, financial affairs, business methods or service of the corporation . . . (including, without limitation, customer or client lists, pricing, underwriting, marketing, financial or sales information, forecasts, business and strategic plans, customer needs and renewal dates, personnel, . . . and corporate policies and procedures), and any other confidential matter or trade secrets, except information which at the time is generally known to the public other than as a result of disclosure by Employee not permitted hereunder, or (ii) take with Employee upon leaving the employ of the Corporation any document or paper relating to any of the foregoing or any physical property of the Corporation or any *76 of its sources with which insurance is placed, policyholders, expiration or renewal dates, inspection or credit reports, and data on insurance risks being written.
1.7. Non-Solicitation. Except as set forth in Section 1.7(c), during Employee’s employment by Corporation and during the two (2) year period commencing on the date of Employee’s termination or cessation of employment (for any reason):
(a) Employee will not, directly or indirectly, on behalf of himself/herself or any competing organization, solicit or sell insurance business from any person, partnership, corporation or other entity for whom Employee performed services while employed by Corporation or which were solicited by Employee on behalf of Corporation.
(b) Employee will not, directly or indirectly, on behalf of himself/herself or any competing organization, solicit or sell insurance business from any person, partnership, corporation or other entity who is then a client of Corporation or who was a client of Corporation during Employee’s employment with Corporation.
(c) Until June 1, 2000, the restrictions set forth in this Section 1.7 shall not apply to any of the Employee’s prior existing clients which were developed by the Employee before Employee’s employment with Corporation. After June 1, 2000, the restrictions in this Section 1.7 shall apply to all insurance business and clients of Corporation, regardless of whether they comprise Employee’s prior existing clients.
This covenant shall extend to the entire geographic area of the State of New Jersey and/or to any areas or locations that were utilized by any person, partnership, corporation or other entity for whom Employee performed services while employed by Corporation or which were solicited by Employee on behalf of Corporation.
Acordia agreed to pay Hebert $125,000 in consideration of the clients that Hebert brought with her, the payment to be made over a three-year period beginning in June of 2000, at the point that the non-solicitation provisions in Paragraph 1.7 of the non-solicitation agreement quoted above would begin to apply to those clients. (See Paragraph 1.7(c).) Acor-dia made the payments in three equal installments of $66,666, in June of 2000, 2001, and 2002.
Acordia represents, without contradiction, that all but one of the individual defendants signed similar non-solicitation agreements with Acordia, although none of the other defendants had similar provisions relating to clients brought to Acordia.
Between December 1 and 15, 2004, the following occurred.
On or about December 1, 2004, the certificate of organization for the defendant Academic Risk was filed, with the defendant Hebert listed as its sole director;
On December 1, 6, and 8, 2004, respectively, the defendants O’Brien, Titus, and Haughey resigned from Acordia, with two of the three stating that they would work through to December 15, 2004;
On December 15, 2004, in a fax message sent at 12:02 p.m., with the subject heading of “Change in OCIP Service Team,”[3] the defendant Hebert, identified in the fax as the president of Academic Risk, wrote to a representative of Tufts University, a university that was a client of Acordia, as follows: “With effect as of December 15, 2004, the entire Higher Education and Owner Controlled Insurance Program staff of Acordia Boston is moving to Academic Risk Resources & Insurance, LLC. For the purpose of maintaining the continuity of the Tufts OCIP Program, we request that you transfer the administration of the program to Academic Risk... with effect as of December 15, 2004. A copy of the draft letter(s) of authorization needed to complete this transaction are attached for review, and signature ...”
Between 9:15 and 9:24 p.m. on December 15, 2004, the remaining eleven individual defendants resigned simultaneously from Acordia, sending their individual resignation letters in a single fax package; and
On December 16, 2004, the defendant Kolleen Rahilly emailed the same representative of Tufts, stating in part: “As you are aware, your applicable insurance program has been moved to Academic Resources & Insurance, LLC, effective December 15, 2004. We are located at 1010 Commonwealth Avenue, Boston . . . Please feel free to contact us at anytime, and our contact information is attached
At the beginning of December 2004, there were thirteen employees who worked as part of the higher education team at Acordia, and other employees who provided substantial services to the higher education team, including the defendants O’Brien, Titus and Haughey. As of December 15, 2004, at 9:24 p.m., eleven of the higher education team’s thirteen members had departed, as had the three others just named who were associated with but not part of the higher education team. All of these defendants are now employed at Academic Risk.
The communications between Hebert/Academic Risk and the representative of Tufts Eire described above. It appears that Tufts is now a client of Academic Risk. It further appears that a number of other colleges and universities that had been clients of Acordia are in the process of becoming or have now become clients of Academic Risk. These include Northeastern Univer *77 sity, Brandéis University, Bentley College and the University of Connecticut.
A substantial number of Acordia documents and materials containing confidential and proprietaiy information, including original client files, were in the hands of the defendants at the point they left their employment with Acordia. The record reflects factual disputes concerning the reasons why these documents and other materials of Acordia were taken from Acordia, but it does appear that most if not all of these items have now been returned to Acordia.

Discussion

In evaluating Acordia’s request for a temporary restraining order, I am obliged to evaluate its chance of success on the merits with its claim of injury, and, if persuaded that failure to grant the restraining order is likely to cause irreparable harm, I must balance that risk against a risk of irreparable harm to the opposing party if the injunction is granted. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
1. Acordia brings claims for breach of fiduciary duty (duty of, misappropriation of trade secrets, conversion, breach of contract, civil conspiracy, tortious interference with contractual relations, and violation of G.L.c. 93A.[4] The facts in the record indicate that all the individual defendants but the defendant Barnum signed non-solicitation agreements which bar both the solicitation of Acordia clients with whom they did business, and the sale of insurance to such clients.[5] It seems clear from the materials submitted by Acordia that on behalf of Academic Risk, Hebert in substance solicited the business of at least Tuftsor more accurately, seems to have unilaterally transferred Tufts’ business to Academic Risk. Hebert’s own affidavit suggests that in substance she solicited the business from the members of the Boston Consortium. (See 16.) Moreover, even if, as the defendants would have it, no explicit, affirmative act of solicitation of these other clients occurred, there is no question that all the individual defendants and Academic Risk are now servicing the former Acordia clients, conduct which itself appears to violate the non-solicitation agreementseither explicitly (e.g., in the cases of defendants Doran, Gould Gaitley, Haughey, Rahilly, and Willis) or implicitly, because “selling insurance” would appear to include servicing insurance clients to whom or to which insurance has been sold.
The record thus shows a reasonable likelihood that the individual defendants have violated the non-solicitation provisions of their agreements. The question is whether these provisions are enforceable as part of an agreement that protects a legitimate business interest of Acordia, is reasonably limited in time and space, and is consistent with the public interest. See generally, e.g., Boulanger v. Dunkin’ Donuts, Inc., 442 Mass. 635, 639 (2004); Marine Contractors Co. v. Hurley, 365 Mass. 280, 287-88 (1974). See also, e.g., Solari Indus., Inc. v. Malady, 55 N.J. 571, 576 (1970).[6] I conclude that they are. Both sides appear to agree that in the specialized field of insurance for large colleges and universities, there are a relatively small number of clients in any particular geographic area. If a company such as Acordia has invested its resources to develop a client base and good will in this field, it is entitled to take reasonable steps to protect that good will. The non-solicitation agreements, combined with their provisions barring use and disclosure of confidential business information and trade secrets, represent such a reasonable step, so long as the time and space limitations in the agreements are reasonable. On the latter point, the defendants do not appear at this juncture to challenge the two-year duration or the geographical scope of the agreements. Moreover, in light of the fact that under Massachusetts as well as, it appears, New Jersey law, a court may restrict both termporal and geographic limitations that are too broad, there is no need to be concerned about these provisions in considering whether a TRO should issue.
Hebert claims that no injunctive relief should be granted because (1) all she has done is use her general knowledge and skill in setting up Academic Risk and attracting the former Acordia clients, not the confidential information of Acordia; (2) the non-solicitation provisions in her agreement should be unenforceable because she was (orally) promised she could purchase her “book of business”; and (3) Acordia was engaging in highly questionable business habits, and she was badly treated for complaining about this and for other reasons as well. The claims deserve rejection at this point in the case. First, use of general knowledge and skillwhich is permitteddoes not begin to describe what has apparently happened in this case, which was a coordinated mass defection of the higher education team from Acordia accompanied by a swift, targeted appropriation of Acordia’s major higher education clients. Second, on the purchase of the “book of business” (a phrase Hebert does not explicate in any way), it seems strange at best that the non-solicitation agreement, with its specific terms dealing with the clients that Hebert brought to Acordia and how they would be treated in relation to Hebert’s employment over time, contains not one word about Hebert’s right to buy her “book of business.” In any event, there is nothing in this record to indicate that Hebert ever offered to pay money for that “book of business” before she unilaterally decided to take it. Third, Hebert was a high level employee of Acordia, and veiy highly compensated. She was represented by counsel in negotiating the terms of the non-solicitation agreement and later changes to it. There is no reason why its terms should not be binding on her. There are warring affidavits about the facts of Hebert’s interactions with her superiors in and before the fall of2004, but even if Hebert was, or perceived herself to be, treated inappropriately or even badly, this does not *78 excuse her from the obligations, contractual and otherwise, that she owed to Acordia.[7]
Acordia’s claim of breach of fiduciary duty also has support in this record. No one disputes that as a general matter, employees of a venture may take steps to organize a competing venture while still employed by the original venture. See, e.g., Augat v. Aegis, 409 Mass. 165, 172 (1991). See also Lamorte Burns & Co., Inc. v. Walters, 167 N.J. 285, 302 (2001). “(They are] not, however, entitled to solicit customers for such rival business before the end of [their] employment nor can [they] properly do other similar acts in direct competition with the employer’s business.” Id. The December 15, 2004, email to Tufts indicates a direct solicitationor arrogationof Tufts’ business while the defendants were still employed by Acordia. In addition, there does appear to be force behind Acordia’s allegation, made on information and belief, that Hebert played a key role in bringing about the departure of the other individual defendants from Acordia to join Academic Risk. In not protecting Acordia against the loss of such a critical mass of its higher education team employees, Hebert breached another aspect of her duty of loyally. See Augat v. Aegis, 409 Mass, at 171. Acordia has demonstrated a likelihood of success on at least some key aspects of its breach of fiduciary duty claim.[8]
Acordia has also shown a likelihood of irreparable harm. The wholesale departure of most of its higher education team has put Acordia in an extremely difficult position, but without injunctive relief. Acordia will have absolutely no ability to salvage any of its higher education business: as this record shows, within the space of two or three days, it seems, the individual defendants appear to have arranged for the transfer of many Acordia clients to Academic Risk, despite their non-solicitation agreements. If no injunction is granted, there is obviously no way to assure that Acordia will not also lose to the defendants whatever additional clients may remain. While the defendants argue that money damages are available, its measurement is veiy far from certain.[9]
Finally, the balancing of harms favors Acordia. Hebert and the other individual defendants acted in a manner that violated their contractual obligations and, at least for some of them, breached fiduciary duties of loyalty owed to Acordia. While they claim that injunctive relief for Acordia is futile because the clients will not in any event return to Acordia, the absence of injunctive relief would in effect reward the defendants for their conduct. I am not willing to follow such a path.
An additional point. This memorandum does not address the materials claimed to belong to Acordia that the individual defendants appear to have taken from the company. It appears that most or all of those materials have been returned, but in case there are still some that have not, Acordia is entitled to an order requiring their return.
The temporary restraining order granted on December 31, 2004, follows the paragraphs of Acordia’s motion for preliminary injunction. I leave for further argument whether Acordia should be entitled to some or all of those paragraphs, or the additional paragraphs Acordia has proposed, as a preliminary injunction.

ORDER

For the foregoing reasons, it is ordered that:
1. Each of the defendants, and all officers, agents, servants or employees of any of them, and any person acting on behalf of or in concert with any of them are temporarily restrained from failing to:
a. return to Acordia within 24 hours any and all copies, including electronic files and computer diskettes, of the Acordia documents and materials that were returned by defendants to Acordia through counsel on or about December 21, 2004; and
b. return to Acordia within 24 hours any other property of Acordia, including but not limited to any computer equipment, any PalmPilot, or other handheld communication device.
2. Each of the defendants, and all officers, agents, servants or employees of any of them, and any person acting on behalf of or in concert with any of them are also temporarily restrained from:
a. soliciting or accepting insurance business from, or providing any insurance-related product or service to, or any person, business or entity to whom or which Acordia’s higher education team provided any insurance-related product or service at any time after December 15, 2003;
b. soliciting or accepting insurance business from, or providing any insurance-related product or service to, any person, business or entity to whom or which Acordia’s higher education team actively sought to provide any insurance-related product or service at any time after December 15, 2003;
c. misappropriating, disclosing, copying or using any of Acordia’s confidential information or trade secrets, including but not limited to Acordia’s files regarding work for clients of its higher education team; and
d. misappropriating, disclosing, copying or using any documents or information relating in any way to Acordia’s business that defendants obtained directly or indirectly through or in the course of any defendant’s employment with Acordia.
A hearing on Acordia’s request for a preliminary injunction will be held on the date scheduled by the court.

Acordia filed this case as one within the Business Litigation Session, but on the date of filing, Judge van Gestel, the presiding judge of the Business Litigation Session, was on vacation, and will be on vacation until January 3, 2005. It now appears the case will be assigned to Judge Bumes.

Included among the insurance programs that the Acordia higher education team markets and services are “Owner Controlled Insurance Programs” (OCIPs), which are comprehensive packages of insurance for construction projects that a college or university may undertake.

The breach of fiduciary duty of loyally and breach of contract claims are brought against the individual defendants; the misappropriation of trade secrets, conversion, and civil conspiracy claims are brought against all defendants; and the violation of G.L.c. 93A claim is brought against Academic Risk only.

Ihe specific terms of the non-solicitation agreements are not all the same, and some of the agreements have dramatically challenged sentence structures, but I understand the gist of the agreements to bar solicitation of business from Acordia clients and selling to or servicing such clients.

While there is some ambiguity in Hebert’s non-solicitation agreement on the point, the other non-solicitation agreements all specify that they are governed by New Jersey law. In their memoranda filed to date, Acordia has cited both Massachusetts and New Jersey law to support its position, and the defendants have cited Massachusetts law. In any event, as the cases cited in the text reflect, it does not appear that there is any substantive difference in the two States’ law that applies to the enforceability of restrictive covenants in employment agreements.

The record does not contain many details about the relationship between Acordia and the other individual defendants, or the circumstances surrounding their execution of the non-solicitation agreements. There is no suggestion, however, that these defendants signed the agreements under duress, or that there are other factors arguing against the agreements’ enforceability.

There is no need to go through each of Acordia’s substantive claims for purposes of considering the merits of its case, but it is perhaps important to focus on the claim of unfair or deceptive conduct that is brought against Academic Risk. The acts of Academic Risk, through its employees, in directly moving in to take over the business of Acordia’s higher education clients in the face of non-solicitation agreements that barred such conduct, smacks,of unfairness, and supports the merits of the c. 93A claim.

Hebert points out that when she joined Acordia, her former employer sued her because she was allegedly violating restrictive covenants in her employment agreement with that employer, and that the suit was resolved by the payment of money. Hebert argues that this result demonstrates money damages are available. The voluntary settlement of that prior suit for money does not directly speak to the question of how Acordia would be able to prove the extent of money damages, if required to do so at a trial.