Fabricant, Judith, J.
INTRODUCTION
This action arises from the termination of employment relationships, and the establishment of a competing business, in the field of hairdressing. The plaintiff, former employer of the three defendants, seeks a preliminary injunction to enforce non-competition agreements. After hearing, and review of all materials submitted, the Court is not persuaded that the plaintiff has established the elements required to warrant issuance of a preliminary injunction pending the expedited trial that the Court has scheduled, with agreement of all counsel, for November 14, 2007. Accordingly, the motion will be denied.
BACKGROUND
The materials before the Court at this preliminary stage — the plaintiffs verified complaint, with attachments, and an affidavit of each defendant — provide the following factual background. The plaintiff, Debora Lunt, is the sole proprietor of the Debora Lunt Hair Studio, located in Beverly Farms. Each of the three defendants worked for Lunt as a hairdresser, Michelle Tobin from 1995 until she resigned in January of 2007, with a four-month interruption in 1998, Melissa Campbell from 1990 to August of 1996, and then again from May of 1997 until July 24, 2007, when she either resigned or was fired (the point is in dispute), and Gia Davis from 1998 until either 2001, according to her affidavit, or 2003, according to Lunt’s allegation. Tobin and Campbell both assert in their affidavits that during their employment with Lunt they were encouraged to, and did, develop their own clientele of repeat customers.
In July 1995, about a month after Tobin began her employment with Lunt, and some five years after Campbell began hers, Lunt asked each of them to sign an employment agreement, indicating that refusal would trigger termination. Each signed the form, without negotiation. [1] The form provided that the employee, for a period of two years from termination of her employment, would not “sell, offer, or offer for sale, solicit any customers or customer lists,” and would not “engage in any way, directly or indirectly, in any business competitive with the Employer’s business, nor solicit by advertisement through any media, or in any other manner work for or assist any competitive business in Essex County.”[2]
After Tobin’s resignation from Lunt’s employment in January of 2007, Tobin and Davis opened a hair salon in Peabody, some ten miles from the site of Lunt’s salon in Beverly Farms, under the name of Gichelle’s Hair Studio. Tobin and Davis, according to their affidavits, share the costs of operating Gichelle’s, but each serves her own clients, keeps her own schedule, and retains her separate receipts.
Shortly after Tobin left Lunt’s salon, according to Lunt’s verified complaint, Lunt discovered that records of the clients Tobin had been servicing while in Lunt’s employ were missing from Lunt’s salon. Lunt also asserts that for some months prior to her departure, Tobin had failed to enter telephone numbers of her clients into Lunt’s records; she does not explain the basis for that assertion. Tobin denies taking any records, and denies any failure to enter client information in the records of Lunt’s salon. Lunt and Tobin met in January to discuss these issues, but did not reach resolution. Lunt sent Tobin a letter, dated March 28, 2007, asserting that Tobin’s conduct was in violation of the employment agreement, and that Lunt was considering filing suit. Lunt did not, however, file suit against Tobin until five months later. Lunt asserts “on information and belief’ that Tobin has solicited and serviced at Gichelle’s approximately ninety clients that she had previously serviced while in Lunt’s employ.
Shortly after Campbell’s employment with Lunt ended on July 24, 2007, Campbell arranged with Tobin and Davis to rent a chair at Gichelle’s, for a fixed weekly amount, where she then began to service clients on her own behalf. She then, according to her *146 affidavit, “contacted my clients and informed them of my new location.” Lunt asserts “on information and belief’ that Campbell, like Tobin, has solicited and serviced approximately ninety clients she had serviced while in Lunt’s employ. The basis for this belief, the complaint asserts, is “customer telephone inquiries and comments at the Lunt studio, referring to calls from Campbell soliciting their patronage at Campbell’s new place of business.” Lunt asserts further that, for some months prior to July of 2007, Campbell failed to record client telephone numbers into Lunt’s records; Campbell denies that assertion.
Lunt filed this action on August 30, 2007. She alleges breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, breach of fiduciary duly, and interference with advantageous business relationships against Tobin and Campbell, misappropriation of confidential business information, unjust enrichment, and civil conspiracy against all three defendants, interference with contractual relations against Tobin and Davis, and violation of G.L.c. 93A against Davis. She seeks preliminary and permanent injunctive relief and damages.
DISCUSSION
“A party seeking a preliminary injunction must show that (1) success is likely on the merits; (2) irreparable harm will result from denial of the injunction; and (3) the risk of irreparable harm to the moving party outweighs any similar risk of harm to the opposing party.” Cote-Whitacre v. Department of Pub. Health, 446 Mass. 350, 357 (2006) (Spina, J., concurring), citing Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). Here, to warrant issuance of a preliminary injunction against Campbell and Tobin, Lunt must show, first, a likelihood that she will prevail at trial in showing that both that the non-competition and non-solicitation provisions in the employment agreements are enforceable against each of them and that each has violated those provisions, and second, that in the absence of an injunction between now and the November 14, 2007 trial date, she will suffer harm sufficiently severe and irreparable to outweigh the harm that an injunction will impose on the defendants. As to Davis, Lunt must show, in addition to enforceability and breach by Campbell and Tobin, a likelihood that she will succeed in proving that Davis has encouraged or induced that breach, along with irreparable harm. The record establishes that Campbell and Tobin are violating the non-competition provisions of their agreements, and that at least Campbell has violated the non-solicitation provisions of her agreement. The record is considerably weaker, however, as to enforceability of the agreements, and as to irreparable harm.
“A covenant not to compete is enforceable only if it is necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest.” Boulanger v. Dunkin’ Donuts Inc., 442 Mass. 635, 639 (2004), citing Marine Contrs. Co. v. Hurley, 365 Mass. 280, 287-88, 289 (1974), and All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974). “Covenants not to compete are valid if they are reasonable in light of the facts in each case.” Id., citing Marine Contrs. Co., 365 Mass. at 287 and Saltman v. Smith, 313 Mass. 135, 145 (1943).
Here, the plaintiff asserts that the provisions in the agreements protect her legitimate interests in customer good will and in confidential customer information. As a general matter, good will and confidential business information are legitimate business interests that may properly be protected by non-competition agreements. See Boulanger, 442 Mass. at 641, citing Marine Contrs. Co., 365 Mass. at 287. Invoking the general proposition, however, does not suffice to establish that the agreements in this case serve to protect those interests. The facts presented at this preliminary stage raise considerable question as to who, as between Lunt and her employees, actually developed and enjoys the good will of the individual clients whom Tobin and Campbell serviced at Lunt’s salon. Hairdressers are not fungible; each employs individual skills and techniques that may, or may not, meet the needs and preferences of an individual client. Location, ambiance, business hours, and other factors may also influence a client’s choice, but at least on the present record, it is not apparent that the good will of the clients these defendants have serviced necessarily belongs to Lunt, rather than to the defendants. See Sentry Ins. v. Firnstein, 14 Mass.App.Ct. 706, 708 (1982) (“The objective of a reasonable noncompetition clause is to protect the employer’s good will, not to appropriate the good will of the employee”), citing 6A Corbin, Contracts §1391B (1982 Supp.); Getman v. USI Holdings Corp., Civil No. 2005-3286, 2005 WL 2183159, at *3 (Mass.Super.Ct. Sept. 1, 2005) (“The good will . . . that [the former employer] legitimately may preserve is its own good will, not the good will earned by the employee that fairly belongs to the employee”); First E. Mortgage Corp. v. Gallagher, Civil No. 1994-3727, 1994 WL 879546, at *1 (Mass.Super.Ct. July 21, 1994) [2 Mass. L. Rptr. 350] (denying injunction where good will “was the defendant’s own making, which he had developed with customers as a result of his own enthusiasm, personality and abilities”); compare W.B. Mason Co. v. Staples, Inc., Civil No. 2000-5042, 2001 WL 227855, at *5 (Mass.Super.Ct. Jan. 18, 2001) [12 Mass. L. Rptr. 603] (salesmen for office supply retailer had not developed their own good will).
As to trade secrets, the defendants deny having taken any records from Lunt, and Lunt’s showing in that regard rests on circumstances that may warrant suspicion, but do not amount to substantial proof. It appears that Campbell, at least, has used information known to her to contact clients she serviced while in Lunt’s employ, but it is not apparent that mere names and telephone numbers of customers with whom *147 Campbell was well acquainted constitute confidential information belonging to Lunt.
Nor does the record presently before the Court establish that the agreement is reasonable in time and scope in relation to the interests served. Massachusetts courts have enforced non-competition agreements up to two years in some circumstances, see, e.g., All Stainless, Inc., 364 Mass. at 779, but it is not apparent that such a long time is necessary in this context, involving a service clients usually require at intervals of weeks or months. As to territorial scope, Essex County encompasses many square miles of territory. Absent further proof on the issue, the Court is not prepared to assume that the entire county constitutes a single market for hairdressing services. To the contrary, a client’s willingness to travel the distance from Beverly Farms to Peabody to receive services from Campbell or Tobin tends to suggest that that client’s good will runs to Campbell or Tobin far more than to Lunt or her salon, so that a non-competition provision encompassing the entire county goes beyond protecting any actual good will of the employer. See AÍÍ Stainless, Inc., 364 Mass. at 779-80 (limiting restriction to sales area served by former employee); Marine Contrs. Co., 365 Mass. at 289 (upholding 100-mile restriction in accordance with geographic spread of customer base).
An additional question arises with respect to enforceability. The facts appearing in the present record indicate that Campbell and Tobin were each called upon to sign the agreement during her employment, on pain of termination, with continued employment as the only consideration offered. Although Massachusetts courts have held that continued employment is sufficient consideration, so that an agreement executed under such circumstances is not necessarily void on that ground alone; see Economy Grocery Stores Corp. v. McMenamy, 290 Mass. 549, 552 (1935); Sherman v. Pfefferkorn, 241 Mass. 468, 473 (1922); these circumstances weigh in the Court’s evaluation of equitable factors in deciding whether to enforce by means of the grant of an injunction. See generally Sentry Ins., 14 Mass. at 707, quoting Restatement (Second) of Contracts §188, comment g (1981) (post-employment restraints construed strictly against employer because “they are often the product of unequal bargaining power and because the employee is likely to give scant attention to the hardship he may later suffer through the loss of his livelihood”); see also IKON Office Solutions, Inc., 59 F.Sup.2d 125, 130-32 (D.Mass. 1999) (expressing doubt about adequacy of continued employment as sole consideration for post-employment non-competition agreement under current Massachusetts law); Tyler Techs., Inc., v. Reidy, Civil No. 2006-4404, 2006 WL 4119598, at *3 (Mass.Super.Ct. Oct. 30, 2006) [21 Mass. L. Rptr. 669] (questioning adequacy of consideration where defendant was already an employee when agreement was signed).
Nor is the Court persuaded that Lunt has established irreparable harm sufficient to outweigh the harm an injunction would inflict on Campbell and Tobin, particularly in light of the substantial questions on the merits. The plaintiffs legitimate concern is to avoid losing long-time repeat customers. Her records should make it possible to identify such customers, and the defendants’ records should make it possible to determine which of them have taken their business to the defendants, or will do so between now and the time of trial, and how much revenue their business generates within a specified period of time. The difficulty of proof for both sides will involve questions of what those customers would do, or would have done, without the option of following the defendants to a new location in Essex County.
On the other side of the scale, both Campbell and Tobin present a substantial showing of harm that would result from an injunction. As to Tobin, Lunt waited some eight months to seek to enforce the agreement. During that time, Tobin established her business, investing time and resources and presumably incurring obligations. An injunction requiring her to shut down pending trial would likely put her entire investment in serious jeopardy. The plaintiffs delay in itself makes an injunction inappropriate as to Tobin. See Stewart v. Finkelstone, 206 Mass. 28, 36 (1910) (“If there has been unreasonable delay in asserting claims or if, knowing his rights, a party does not seasonably avail himself of means at hand for their enforcement, but suffers his adversary to incur expense or enter into obligations or otherwise change his position, or in any way by inaction lulls suspicion of his demands to the harm of the other, or if there has been actual or passive acquiescence in the performance of the act complained of, then equity will ordinarily refuse her aid for the establishment of an admitted right, especially if an injunction is asked”); Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. 488, 494-95 (1986) (“Unexplained delay in seeking relief for allegedly wrongful conduct may indicate an absence of irreparable harm and may make an injunction based upon that conduct inappropriate”).
As to Campbell, her affidavit indicates that she was fired abruptly, without notice, and has no means to support herself other than the income she earns from servicing her longtime clients. An injunction pending trial would deprive her of her only means of support at least until such time as she could obtain employment outside of Essex County, or in another field of work. The record now before the Court does not justify imposing that hardship.
As to Davis, on the facts as she presents them in her affidavit, she has no role in the other defendants’ violations of their contracts, and the only benefit she *148 derives from those violations is her half of Campbell’s rent for a chair at Gichelle’s. The plaintiff has provided nothing to contest Davis’s version of the facts. No basis appears for injunctive relief against Davis.
CONCLUSION AND ORDER
For the reasons stated, the Plaintiffs Motion for Preliminary Injunction is DENIED.

Tobin’s affidavit states that she was not permitted to take the agreement home for review with counsel or with her then fiancé.

Davis, Lunt alleges, signed the same agreement at the outset of her employment in 1998. She does not allege any violation of that agreement by Davis, since the two-year term of the non-solicitation and non-competition provisions had run by the time Gichelle’s opened.