Kern, Leila R., J.
This case involves the plaintiffs’ allegations that defendant, Sharon Klopfenstein Batchelor, breached her non-solicitation agreement with plaintiff insurance companies after her firing by plaintiff, Liberty Mutual. What is before the court at this time is plaintiffs’ Motion for Preliminary Injunction. For the following reasons the motion is DENIED.
BACKGROUND
The essential facts are undisputed up until the time Batchelor was terminated from Liberty Mutual. She was a licensed insurance salesperson when she was hired by Liberty Mutual in August 2006 as an account representative in the commercial division. Batchelor was presented with a non-negotiable “Non-Solicitation, Non-Disparagement and Confidentiality Agreement,” consideration for which was being hired. The account representatives were required to submit an annual business plan and execute a new non-solicitation agreement. The consideration for the latter was continued employment by Liberty Mutual. The last such agreement she signed was on February 15, 2008.[1]
The day Batchelor returned to work from maternity leave on February 2, 2009, she was terminated by Liberty Mutual. She was told the commercial division has been acquired by USI INSURANCE Services, LLC and she was not one of the account representatives USI retained. Batchelor left that day taking only her personal belongings. During that same month, Batchelor joined Eastern Insurance Group, LLC as an account representative. She began work on February 16, 2009. In her affidavit, submitted in support of her opposition to this Motion for Preliminary Injunction, defendant avers that “When I joined Eastern, I did not send any mail or email notices to former Liberty clients, or telephone these clients. At least two of my former clients called me on my cell phone and asked me why they were being contacted by a new account representative from USI. I told them that I was no longer with Liberty. Each of them then told me that they wished to place their insurance business through me and Eastern, and the business was placed.” (Aff. ¶23.)
Defendant admits that she did contact a former client, described as “Client Northeast" in the Verified Complaint, in July 2009. The client called her back in September to say they would not be pursuing a quote for insurance with Eastern because USI had informed them defendant had a non-solicitation agreement in place. Defendant avers she has “not spoken to anyone from Northeast since September, and [has] no intention of approaching them.” (Aff. ¶ 24.) Plaintiffs’ Verified Complaint indicates no client other than “Client Northeast” that the defendant has approached since September. Plaintiffs’ Verified Complaint refers to *447 other unnamed clients who were solicited by the defendant. As to those former clients defendant cannot respond with respect to the initial contact between those clients and Batchelor after she was terminated.
In ¶54 of the Verified Complaint Liberty Mutual asserts that defendant has failed to “provide confirmation that she is no longer in possession of any” confidential information. In her affidavit, defendant both avers that she never took “policy account information” and does not have such information in her possession now.[2] (Aff. SI 25.)
DISCUSSION
Preliminary Injunction Standard
“A party seeking a preliminary injunction must show that (1) success is likely on the merits; (2) irreparable harm will result from denial of the injunction; and (3) the risk of irreparable harm to the moving party outweighs any similar risk of harm to the opposing party.” Cote-Whiteacre v. Department of Pub. Health, 446 Mass. 350, 357 (2006) (Spina, J. concurring), citing Packaging Indus. Group, Inc. v. Cheney, (1980). Restrictive covenants in employment agreements are enforceable only to the extent necessary to protect legitimate business interests of the employer, and only if “reasonably limited in time and space, and consonant with the public interest.” Boulanger v. Dunkin’ Donuts, Inc., 442 Mass. 635, 639 (2004). To warrant issuance of a preliminary injunction against Batchelor, the plaintiffs must show, first, a likelihood that it will prevail at trial in showing both that the restrictive covenants in the employment agreement are enforceable and that the defendant has violated those provisions and second, that in the absence of an injunction between now and the time of trial, plaintiffs will suffer harm sufficiently severe and irreparable to outweigh the harm that an injunction will impose on the defendant.
Good Will
The primary employer interest here is customer good will. An employer’s customer good will is a legitimate business interest that may properly be protected by restrictive covenants. See Boulanger, 442 Mass. at 641. A court must consider, however, based on the facts of the particular case, whether the good will in issue belongs to the employer or the employee. See Sentry Ins. v. Firnstein, 14 Mass.App.Ct. 706, 708 (1982) (“The objective of a reasonable noncompetition clause is to protect the employer’s good will, not to appropriate the good will of the employee”). The facts thus far presented to this court by way of the Verified Complaint and the defendant’s affidavit bring this case squarely into the category of cases.
Here the clients who were formerly Batchelor’s when she was at Liberty Mutual, and who contacted her when she was terminated from Liberty Mutual fit the category of clients who were brought to Liberty Mutual by the defendant and who preferred the way in which she handled their accounts to an unknown account representative from USI who called them. That is, they are in the category within the ambit of the employee’s good will. See Getman et al. v. USI Holdings Corp. et al., 19 Mass. L. Rptr. 679; 2005 Mass.Super. Lexis 407 (Gants, J. found that while USI’s restrictive covenant was reasonable it would not bar the employee from accepting insurance business from his former USI clients if, without his solicitation of their business they wish him to continue to service their insurance needs at his new employer).[3] The fact that two of defendant’s clients contacted her is neither a breach of the non-solicitation agreement nor a breach of her fiduciary duty to plaintiffs.
The one client solicitation admitted to caused no harm as the client turned down Batchelor’s offer to get a quote for them for their business with Eastern and it stayed with USI. The defendant has agreed not to contact any of the other clients whose accounts she serviced while at Liberty Mutual. (Aff. ¶ 24.)
ORDER
For the reasons stated above, Plaintiffs’ Motion for a Preliminary Injunction is DENIED.

Batchelor never executed any type of agreement with USI.

To the extent policy holders’ phone numbers are to be considered confidential client account information, defendant avers she no longer has that information that had been contained in her cell phone.

In that case J. Gants discusses at some length the difference between solicitation and responding when a former client contacts their former agent or account representative. (Id. at *12.)