SENTRY INSURANCE vs. ROBERT J. FIRNSTEIN.

Middlesex.   September 20, 1982. — November 26, 1982.

Present: BROWN, DREBEN, & KASS, JJ.

*Contract,* Employment, Covenant against competition.  *Covenant Against Competition.*

In an action by an insurance company alleging that its former employee, a salesman, had taken its customers in violation of the noncompetition clause in an employment contract which the company had required him to enter after four years' employment, the judge properly construed the standard-form contract strictly against the employer, so as to bar the salesman only from initiating transfers of insurance from the employer to other insurers, but not from responding to requests for competitive rates or transfers initiated by customers.  [707]

In an action by an insurance company alleging that its former employee, a salesman, had taken its customers in violation of the noncompetition clause in his employment contract, the judge's findings, on conflicting evidence, that the customers lost by the plaintiff had approached the defendant, that the defendant had taken no initiatives with respect to those customers, and that he had not violated the restrictive clause, were not clearly erroneous.  [708-709]

CIVIL ACTION commenced in the Superior Court Department on October 24, 1978.

The case was heard by *Sullivan, J.*

*Lawrence M. Slater* for the plaintiff.

*Robert J. Firnstein,* pro se.

KASS, J.   Sentry Insurance (Sentry) complains that the defendant Robert J. Firnstein, a former salesman, raided its customers, in violation of a noncompetition clause in Firnstein's employment contract.  A judge of the Superior Court who heard the case without a jury found that Firnstein had not violated the restrictive agreement and judgment entered for Firnstein.  We affirm.

Among the facts found by the judge were the following: when he first went to work for Sentry, Firnstein signed a contract under which he agreed for two years after leaving Sentry not to sell insurance in his primary area (town of Hudson) and not to write insurance for customers of Sentry to whom he had rendered service. Four years later, in 1977, Sentry required its sales representatives to sign a revised employment contract on pain of dismissal from Sentry's employ. It contained a provision under which the sales representative agreed "for two (2) years after . . . termination . . . he will not . . . directly or indirectly, *seek* to induce, promote, facilitate, bring about, solicit, quote rates for, receive, write, bind, broker, transfer or accept replacement or renewal insurance coverage or services for any insurance policy or service sold or serviced by the Sales Representative [Sentry] . . . nor will he induce or seek to induce the discontinuance or lapse of such insurance coverage or service" (emphasis supplied).

Two reasons existed to construe the contract, as the trial judge did, strictly against Sentry: First, it was drafted by Sentry. See *United Shoe Mach. Corp.* v. *Gale Shoe Mfg. Co.*, 314 Mass. 142, 149 (1943); 3 Corbin, Contracts § 559 (1960). Second, it was a postemployment restraint imposed by the employer's standardized form contract. See Restatement (Second) of Contracts § 188 comment g (1981): "[Such contracts] are scrutinized with particular care because they are often the product of unequal bargaining power and because the employee is likely to give scant attention to the hardship he may later suffer through the loss of his livelihood." In the circumstances the judge was justified in concentrating on the introductory word "seek" and construing the contract so as to bar Firnstein only from initiating transfers of insurance coverage from Sentry to other insurers, but not so as to bar him from responding to requests for competitive rates or transfers initiated by his customers. The judge found that the customers lost by Sentry had approached Firnstein, that Firnstein took no initiatives with respect to those customers, and that Firnstein had not violated the restrictive clause.

As to whether Firnstein played the Pied Piper to his former customers after leaving Sentry, the evidence was conflicting. There was sufficient evidence from which the judge could find that Firnstein had not solicited his customers and that his customers had made the advances because they liked his service, because they wanted to deal with an agent who lived in the neighborhood, because in some cases they thought insurance coverage was a fungible product, or because they were dissatisfied with Sentry. An appellate court does not set aside findings of fact unless they are clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948). *C.C. & T. Constr. Co.* v. *Coleman Bros.*, 8 Mass. App. Ct. 133, 135 (1979). Smith & Zobel, Rules Practice § 52.7 (1977). Apart from Firnstein's testimony, the depositions of thirty-seven former customers were introduced in evidence. In the case of thirty, they support the conclusion that those customers sought out Firnstein. As to the remaining seven, different conclusions could, though need not, have been drawn. On the record, we are not left with any conviction that a mistake has been made.

There is also reason to conclude, as the judge did, that Firnstein's good will rather than Sentry's was involved. The objective of a reasonable noncompetition clause is to protect the employer's good will, not to appropriate the good will of the employee. See 6A Corbin, Contracts § 1391B (1982 Supp.).

Other portions of Sentry's employment contract protected confidential information. See *Novelty Bias Binding Co.* v. *Shevrin*, 342 Mass. 714, 715, 717 (1961). *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 674 (1977). There is no evidence that Firnstein used any confidential matter and Sentry lacks any basis to enforce its restrictive agreements on that score.

In early stages of the litigation Sentry had secured a preliminary injunction which prevented Firnstein from writing any insurance in the restricted area. By the time the case came to trial the two-year noncompetition period had expired and the only remedy sought by Sentry was damages. The trial judge concluded that, if damages were to be assessed, they would be nominal and that a liquidated damages clause in the contract bore no rational relationship to the wrong done. *Commissioner of Ins.* v. *Massachusetts Acc. Co.*, 310 Mass. 769, 771 (1942). *A-Z Servicecenter, Inc.* v. *Segall*, 334 Mass. 672, 675-676 (1956). *Renda* v. *Gouchberg*, 4 Mass. App. Ct. 786 (1976). Restatement (Second) of Contracts § 356(1) (1981). See *Wilson* v. *Clarke*, 470 F.2d 1218, 1223 (1st Cir. 1972). Although it is not necessary to reach that issue in view of our determination that Firnstein did not violate his contract with Sentry, we note parenthetically that the record disclosed no reason to disturb the trial judge's finding of nominal damages, particularly in circumstances where the liquidated damages provision was imposed upon the employee under what the judge found to be "practical . . . duress."

*Judgment affirmed.*