van Gestel, J.
This matter is before the Court on a request for preliminary injunctive relief brought by the plaintiff, Veridiem, Inc. (“Veridiem”), against the defendant, William L. Phelan (“Phelan”).
BACKGROUND
On September 2, 2003, shortly after being offered a raise in compensation and an enhanced job title that he requested, Phelan abruptly tendered his resignation and announced his intention to join Unica Corporation (“Unica”), a competitor of Veridiem.
Both Veridiem and Unica are in a relatively small industry providing software applications and consulting in what is called market resource management (“MRM”), a fact conceded by Phelan’s counsel in oral argument. MRM entails processes and capabilities that enhance an enterprise’s ability to orchestrate and optimize the use of marketing resources. MRM applications improve an enterprise’s ability to plan, coordi *9 nate execution and measure the impact of marketing efforts.
In 1998, Phelan co-founded Veridiem (then called Cimetry Incorporated), and continued to be employed by Veridiem until his recent resignation. Phelan served in multiple senior capacities at Veridiem, most recently carrying the title of Director of Auto Services Solutions.
Veridiem develops and licenses software and provides services that enable companies to better manage their marketing resources. It is a young company in a highly competitive marketplace, and has succeeded so far by effective planning, development and innovation. In doing so it carefully protects its business plans, strategies and technical information.
Veridiem’s software and services are used primarily by companies in the automotive, consumer packaged goods, and, more recently, financial industries.
During his tenure at Veridiem, Phelan held a variety of roles. At various times in the company’s history, he was responsible for: product management; product positioning and planning; marketing communications management; team selling of Veridiem’s services and products; and customer solution and contract development He was not deeply involved in engineering the software applications or writing software code for Veridiem products. He was, in short, much more in the marketing end of Veridiem’s business and as such had significant contact with customers and potential customers. Thus, good will, more than technical trade secret type information, is significant with him. Also, of course, of necessity he possesses considerable knowledge about Veridiem’s business and other plans in process and for the future.
While Phelan’s compensation package at Unica was not presented at oral argument, Veridiem’s counsel reported that he was offered in the vicinity of $ 160,000 as an annual salary to stay at Veridiem.
Phelan, like his fellow founders, executed employee non-competition and non-disclosure agreements.
His non-competition agreement, in Paragraph 2, reads:
During the term hereof, you will not, without the Company’s prior written consent, directly or indirectly, alone or as a partner, joint venturer, officer, director, employee, consultant, agent, independent contractor or stockholder of any company or business, engage in any business activity which is directly or indirectly in competition in the United States with any of the products or services being developed, marketed, distributed, planned, sold or otherwise provided by the Company at such time.
Paragraph 1 sets the “term’’ of this agreement as follows:
The Term of this Agreement shall be for a period commencing on the date hereof and ending on the first anniversary of the date on which your employment with the Company terminates for any reason, whether voluntarily or involuntarily.
By Paragraph 6 of the agreement, Phelan agrees that any breach will cause irreparable harm to Veridiem and that injunctive relief, among others, is appropriate relief to prevent violations.
DISCUSSION
In order to prevail on its request for preliminary injunctive relief, Veridiem bears the burden of showing: its likelihood of success on the merits; that it will suffer irreparable harm if the injunctive relief sought is not granted; and that its harm, without the injunction, outweighs any harm to Phelan from his being enjoined. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). Before assaying these issues, it is appropriate to canvass the relevant elements of the Massachusetts law dealing with the enforcement of non-competition and confidentiality agreements.
Employee covenants not to compete generally are enforceable only to the extent that they are necessary to protect the legitimate business interests of the employer. Novelty Bias Binding Co. v. Shevrin, [342 Mass. 714, 716 (1961)]. Such legitimate business interests might include trade secrets, other confidential information, or, particularly relevant here, the good will the employer has acquired through dealings with its customers. See All Stainless, Inc. v. Colby, [364 Mass. 773, 779-80 (1974)). Protection of the employer from ordinary competition, however, is not a legitimate business interest, and a covenant not to compete designed solely for that purpose will not be enforced. Richmond Bros., Inc. v. Westinghouse Bdcst Co., Inc., 357 Mass. 106, 111 (1970).
Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 287-88 (1974).
Phelan’s position at Veridiem was sufficiently high that Veridiem has a justifiable interest beyond that of just ordinary competition in seeking to enforce the non-competition and other covenants of the agreements with Phelan. As noted above, the non-competition agreement itself recites that injunctive relief, among others, is appropriate for a violation.
A non-competition agreement, however, to be enforceable, must be reasonable in geographical scope and length of time. See, e.g., Blackwell v. E.M. Helides, Jr., Inc., 368 Mass. 225, 228 (1975); All Stainless, Inc., supra, 364 Mass, at 779-80; Becker College of Business Admn. & Secretarial Science v. Gross, 281 Mass. 355 (1933). Here, the scope of the United States and the one-year time limit involved in the Veridiem agreement are reasonable for the protection of the matters in issue. Blackwell, supra, 368 Mass, at 229; Marine Contractors Co., Inc., supra, 365 Mass, at 289.
*10 Contracts drafted by employers to limit the employment prospects of former employees — even those at a very high level — must be construed narrowly against the employer. Sentry Ins. Co. v. Firnstein, 14 Mass.App.Ct. 706, 707 (1982). At the same time, clear language must be given a clear application. This is particularly so here with Phelan being one of the founders of Veridiem.
Phelan argues that preventing him from working for Unica Corporation will constitute a hardship. But it was Phelan, not Veridiem, who decided to leave and violate the agreement by joining a competitor in a relatively small industry.
The consequence of every covenant not to compete ... is that the covenantor is deprived of a possible means of earning his living, within a defined area and for a limited time. That fact alone does not make such covenants unenforceable.
Marine Contractors Co., Inc., supra, 365 Mass, at 289.
Mass.R.Civ.P. Rule 65(c) directs that unless the Court, for good cause shown, shall otherwise order, no preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the Court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined. Given Veridiem’s relative youth in the market resource management business, such security seems appropriate here.
PRELIMINARY INJUNCTION
For the foregoing reasons the Court enters the following preliminary injunction:
Upon the posting of security in a manner satisfactory to the Court in the amount of $100,000, the defendant, William L. Phelan, for the period through September 5,2004, is enjoined and restrained from directly or indirectly, alone or as a partner, joint venturer, officer, director, employee, consultant, agent, independent contractor or stockholder of any company or business, engaging in any market resource management business activity which is in competition in the United States with any of the products or services being developed, marketed, distributed, planned, sold or otherwise provided by Veridiem, including in particular Unica Corporation; and from disclosing any of Veridiem’s confidential and proprietary business information and trade secrets to any third party.