Kane, J.
Introduction
The plaintiff, Chiswick, Inc. (“Chiswick”) filed suit against the defendants, Nicholas C. Constas (“Constas”) and Pacific Packaging Products, Inc. (“Pacific Packaging”), asserting that Constas violated his common-law and contractual duties to his former employer, Chiswick, by joining Pacific Packaging and using confidential information of his former employer for the benefit of his new employer. Chiswick now requests a preliminary injunction to prevent Constas from disclosing, using, or misappropriating confidential information of his former employer; preventing him from working for Pacific Packaging; and preventing Pacific Packaging from using this confidential information. Chiswick also seeks injunctive relief to enforce the confidentiality and non-competition obligations in the Employment Agreement executed by Constas and his former employer, Alies Corporation (“Alies”).
The defendants argue that the non-compete agreement signed by Constas is not enforceable- by Chiswick, as the subsequent purchaser of a business, because the covenant did not expressly provide for assignability. They further assert that the plaintiff has failed to establish that it has no adequate remedy by law and that it will suffer irreparable harm; therefore, the balance of hardships favors the defendant.
Background
Alies was a wholesale distributor of shipping, packaging, office, janitorial, lighting, and advertising supplies, which employed a staff of sales representatives to whom it assigned customer accounts. In 1981, the defendant, Constas, started his employment with Alies, at which time he signed an “Employment Agreement.” This agreement contained a non-compete clause which states, in relevant part, “(t]he employee agrees that if he terminates this employment for any reason or if the employer terminates the agreement because of the employee’s breach thereof, the employee will not for a period of one year from such termination solicit orders from any of the customers of the employer who were such customers at the time of such termination either for himself or for any other employer . . .” In 1986, Constas again signed an Employment Agreement with Alies, which contained a similar non-compete clause. Neither of these Employment Agreements signed by the defendant, Constas, contain language allowing for the assignment of the original non-compete.
On April 2, 2004, while he was still an employee of Alies, Constas was offered a sales position with Chiswick. Constas refused this offer, and did not sign the offer letter or the non-competition agreement required for employment with Chiswick. On April 12, 2004, the purchase of Alies by Chiswick was completed. On April 13, 2004, Alies terminated Constas’ employment. Following his termination, Constas returned all of Alies’ materials to the company, including the Salesman’s Monthly Master Book (the so called “Bible”), the Price Book Accounts, the Do Not Call List, the Salesman’s Move/Flag Dead List Report, the BiWeekly Open Order by Salesman for Nick Constas, the Past Due List for Nick Constas, and a Postal Scale. As such, there is no credible evidence that the defendant possesses any papers or copies of Alies’ confidential *105 lists or customer information. On or about April 28, 2004, Constas was employed as a salesman for Pacific Packaging. As a salesman for Pacific Packaging, Constas has solicited Alies’ former customers.
Due to the nature of the shipping and packaging business, customers would purchase their materials from multiple vendors depending on the competitiveness of the vendor’s prices. The plaintiff states that it protected its customer information by limiting the distribution of that information. However, the identification of potential shipping and packaging customers and contacts is generally publicly available via the internet, the Thomas Register, Dun & Bradstreet, as well as the Yellow Pages.
Discussion
The Court may enter a preliminary injunction pursuant to Rule 65 where the plaintiff has met its burden of establishing: (a) a likelihood of success on the merits: (b) that it will suffer irreparable injury if the injunction is not granted; (c) that such injury outweighs any harm that granting of injunctive relief would cause the defendants; and (d) the public interests will not be adversely affected by the granting of the injunction. See Packaging Industries Group v. Cheney, 380 Mass. 609, 617 (1980). In the present case, this court concludes that, for the reasons stated below, the plaintiff has not met its burden.

Likelihood of Success on the Merits

The defendant asserts that he never consented to or authorized the assignment of his obligations under the restrictive covenants in his employment agreement with Alies, nor is there any language in that agreement that would have put him on notice that the restrictive covenant was assignable. This specific issue has not been addressed by any Massachusetts appellate court. Furthermore, there is a split of authority amongst other jurisdictions that have addressed this issue. See Hess v. Gebhard Co., Inc., 808 A.2d 912, 918-19, 924 (Pa. 2002) (“Review of the laws and decisions of our sister states that permit the assignment of employee non-competition covenants, as well as federal case law, reveals a wide disparity of treatment among the jurisdictions”). Accordingly, since this legal issue is unresolved, the plaintiff has failed to demonstrate a likelihood of success.
Generally, “(i]n situations where there has been no express contract of an employee not to use or disclose information entrusted to him during his employment . . . although an employee may carry away and use general skill or knowledge acquired during the course of his employment, he may be enjoined from using or disclosing confidential information so acquired.” New England Overall Co., Inc. v. Woltmann, 343 Mass. 69, 75 (1961). Although it is a significant consideration where the former employee did not take actual lists or papers belonging to his former employer, this fact “does not prevent the former employee from being enjoined if the information which he gained through his employment and retained in his memory is confidential in nature.” Jet Spray Cooler v. Crompton, 361 Mass. 835, 840 (1972). See also Velo-Bind, Incorp. v. Scheck, 485 F.Sup. 102, 107 (S.D.N.Y. 1979) (“Actual physical copying is not essential to establish an unlawful appropriation of trade secrets”). As such, the crucial question to be determined in this case is “whether the information sought to be protected is, in fact and in law, confidential,” which is a factual consideration to be determined based on the conduct of the parties and the nature of the information. Id. In making this determination, the court looks to:
(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which information could be properly acquired or duplicated by others.

Id.

“The mere fact that one could obtain the name and contact information of a customer via public means does not negate confidentiality.” Oxford Global Resources, Inc. v. Guerriero, 2003 WL 23112398, *8 (D.Mass. 2003). However, information is not confidential if competitors could obtain the same information from a third party, or the information is obtainable from publicly available sources. Id. Consequently, it is clear that “(o]ne seeking to prevent the disclosure or use of trade secrets or information must demonstrate that he pursued [an] active course of conduct designed to inform his employees that such secrets and information were to remain confidential.” Jet Stray Cooler v. Crompton, 361 Mass, at 841. To that end, the employer must “exercise eternal vigilance,” and the employee must be “constantly admonished” that information is confidential and “must be kept so.” J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 738 (1970).
In the present case, the credible evidence reveals that the plaintiff did not take proper and reasonable steps to protect the secrecy of the customer lists. For example, the plaintiff employed approximately twelve salespersons, and they, along with the telemarketers, handled thousands of accounts in addition to the approximately 130 accounts serviced by the defendant. Furthermore, at the beginning of each month, all sales representatives were given a “Do Not Call List,” which identified the other sales persons’ accounts. These facts make clear that a number of employees had access to the information that the plaintiff argues is confidential. Furthermore, the identification of potential shipping and packaging *106 customers and contacts is generally, publicly available via the internet, the Thomas Register, Dun & Bradstreet, as well as the Yellow Pages.
The case law makes clear that where the employer openly shares information among its employees, that information will not be deemed confidential. Further, the defendant cannot be enjoined from using this information in future employment. As such, this court concludes that the plaintiff has failed to demonstrate a substantial probability of success on the merits.

Balance of the Hardships

Injunctive relief is only appropriate when the plaintiff establishes that it has no adequate remedy at law and that it will suffer irreparable harm if an injunction is not granted. See Packaging Industries Group v. Cheney, 380 Mass, at 617. In the present case, the plaintiff has not demonstrated that the conduct of the defendants will lead to loss of customers or even damage an established good will among these customers. Cf. Velo-Bind, Incorp. v. Scheck, 485 F.Sup. at 109 (“By siphoning off plaintiffs carefully gleaned customers, defendants subject plaintiff to a definite possibility of irreparable harm, which increases as long as it continues unrestrained ... [w]hat is at stake here is plaintiffs good will. . .”).
Conversely, if this court were to issue the injunction, Constas’ potential harm is significant. If Constas is enjoined from contacting former customers of Alies, his new employer, Pacific, will terminate his employment. Moreover, twenty-three years of established business relationships and goodwill could be irreparably destroyed, thus Constas will be effectively barred from working in his field of expertise. As the primary provider for his family, these potential effects on the defendant are considerable, thus the balance of the hardships is in his favor.
ORDER
It is hereby ORDERED that plaintiffs motion for preliminary injunction is DENIED.