Gants, Ralph D., J.
The plaintiff Carl Getman (“Get-man”) is an insurance agent who began working for the defendant Hastings-Tapley Insurance Agency, Inc. (“Hastings-Tapley”) in 1986. In 1989, he executed a new Employment Agreement with Hastings-Tapley *680 which included provisions barring him for a period of time from competing with Hastings-Tapley, from soliciting its clients, or from accepting insurance business from its clients. In 2003, the defendant USI Holdings Corporation (“USI”) purchased Hastings-Tapley, and Getman became a USI insurance agent. He became unhappy working there and resigned on July 13, 2005 to work for a smaller insurance agency, the plaintiff Cleary Schultz Insurance, LLC (“Cleary”).
Getman and Cleary have filed suit seeking a declaratory judgment that Getman’s 1989 Employment Agreement with Hastings-Tapley does not lawfully restrict his right to compete with USI, to accept business from former clients, or to solicit former clients. The defendants now move for a preliminary injunction seeking precisely that relief pending trial. After hearing, for the reasons stated below, the defendants’ motion for a preliminary injunction is ALLOWED IN PART AND DENIED IN PART.
DISCUSSION
In April 1989, Getman executed an Employment Agreement with Hastings-Tapley which included provisions that:
barred him from retaining or creating any client lists for his own personal use or revealing them to another party (1989 Agreement at 6);
barred him from competing with Hastings-Tapley for three years after his termination, regardless of the reason (id. at 6-7); and
barred him for three years from, “directly or indirectly,” soliciting or accepting insurance business from any Hastings-Tapley client or from any member or employee of any trade or professional association, or union, or other group serviced by Hastings-Tapley (id.).
Getman contends that the 1989 Employment Agreement had effectively been rescinded by Hastings-Tapley and, later, by USI because of unilateral changes in the terms of Getman’s employment that were contrary to the terms of the 1989 Agreement. See generally F.A. Bartlett Tree Expert Co. v. Barrington, 353 Mass. 585, 586-88 (1968). This contention is likely to fail because the changes in Getman’s terms of employment that he points to were not, in fact, contrary to his 1989 Agreement. His promotion to Senior Account Executive and then to Vice-President were not inconsistent with his 1989 Agreement. Nor were changes in the method of calculating his compensation; the Agreement simply provided that he shall be paid “a salary . . . and share of commissions or fees earned, as mutually agreed from time to time.” (1989 Agreement at 4.) Nor did turnover in his staff or changes in the identity of the superior that he reported to violate any provision of his Agreement. His Agreement did specifically provide that he would receive deferred compensation once he became eligible under Hastings-Tapley’s Deferred Compensation Plan, and USI did later terminate its obligation to him under the Deferred Compensation Plan but that termination was done pursuant to a Termination Agreement with Get-man in which he received $123,745 in USI common stock as consideration. Since the parties were permitted to modify the 1989 Agreement, the execution of the Termination Agreement did not render void the entire 1989 Agreement, just that portion of it regarding deferred compensation.
There is one change in employment, however, that did materially change the terms of the 1989 Agreement — USI’s purchase of Hastings-Tapley. When Get-man executed the 1989 Agreement, he agreed not to compete for a period of time against Hastings-Tapley upon his termination; he did not agree not to compete with a much larger insurance brokerage firm such as USI. Since the scope of the non-compete provision was materially changed when USI purchased Hastings-Tapley, this Court finds that it may not be enforced against Getman.
USI, however, is less interested in enforcing the non-compete provision than it is the provision that bars Getman from soliciting or accepting business from his former clients at Hastings-Tapley and later USI. The purchase of Hastings-Tapley by USI does not enlarge the scope of this provision if it is limited only to Getman’s own clients, because Getman reasonably would have understood when he signed the 1989 Agreement that it would apply to solicitation of his own clients, regardless of whether Hastings-Tapley had merged into or been purchased by a larger firm. Therefore, this Court does not find that the provision barring Getman after his termination from soliciting or accepting business from his former clients became unenforceable upon the subsequent purchase of Hastings-Tapley by USI.
The more difficult question is whether the provision barring Getman for three years from soliciting or accepting insurance business from his former clients at USI is unenforceable because it is unreasonable in its time, space, or scope. See, e.g., All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974). Such a provision, like an employee covenant not to compete, generally is enforceable only to the extent that it is “necessary to protect the legitimate business interests of the employer.” Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 287 (1974). “Such legitimate business interests might include trade secrets, other confidential information, or, particularly relevant here, the good will the employer has acquired through dealings with his customers.” Id.
Here, there are no trade secrets at issue and the only confidential information that is truly important is the client list that identifies their names, addresses, telephone numbers, and current insurance policies. The good will at stake is the prior history of reliability, integrity, knowledgability, insurance experience, and prompt service that would cause present insurance *681 clients to renew their existing insurance policies through USI, to procure new policies through USI, and to refer their friends and colleagues looking for insurance brokerage services to USI, as well as USI’s reputation in the community, which may cause other potential clients to come to USI to meet their insurance needs. See generally Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. 488, 497 (1986) (“Good will is of great importance in the insurance brokerage business. Customers have repeated and multiple insurance needs. Prompt service, integrity, and loyalty are of some importance to customers who would tend to rely on key personnel who have demonstrated those qualities in the past”).
The good will, however, that USI legitimately may preserve is its own good will, not the good will earned by the employee that fairly belongs to the employee. See Sentry Insurance v. Firnstein, 14 Mass.App.Ct. 706, 708 (1982) (“The objective of a reasonable non-competition clause is to protect the employer’s good will, not to appropriate the good will of the employee”). The dilemma is that, to some degree, the company’s good will and the employee’s good will are inevitably intertwined. While the client may look to the insurance agent to service his insurance needs and think he is doing a terrific job, part of what may make him terrific is the work performed by others at the insurance agency whom the client may never see or speak with, such as the clerical and technical staff or the management team. In some service businesses, like financial investment advisors, the “product” may be handcrafted for the client, as with a stock portfolio, and the client may mistakenly believe that the employee who hands him the product and describes it to him is also the person primarily responsible for crafting it. In the insurance agency business, the “products” are not created by the agency; the agency primarily steers the client to the insurance company offering the required policies at the lowest price, assists the client with claims, and makes sure the policies do not expire without the client’s knowledge and approval. As a result, by the nature of the business, most, although not all, of the good will belongs to the agent himself, because he is the person primarily responsible for selecting the best policy, working with the client to file claims, and following up with renewals.
By barring Getman’s insurance clients from doing business with him for three years, USI is not only protecting its good will but is also taking the good will that belongs to Getman. It is also imposing a significant burden on Getman’s clients, who may have come to trust him, but not necessarily USI, to handle their insurance needs. To be sure, none of these clients were informed that, should Getman leave USI, they would be barred from continuing to do business with him at his new employ for three years.
This Court preliminarily finds that USI’s restrictive covenant concerning Getman’s future dealings with his former USI clients is reasonable and therefore enforceable only to the extent that it strikes a fair balance between protecting its confidential information and the good will it has earned as a company vs. taking the good will earned by and belonging to Get-man individually. That fair balance would not bar Getman from accepting insurance business from his former USI clients if, without his solicitation of their business, they wish him to continue at Cleary to service their insurance needs. These clients, on their own, will have already come to the decision that it was Getman’s good will they enjoyed, not that of USI, and they should be free to act upon that decision. That fair balance would also not bar Getman from soliciting USI clients who were not his former clients to transfer their business to Cleary. Since he never handled these accounts personally, there is no risk that these clients will confuse his good will with that of USI.
That same fair balance would enforce the prohibition against Getman soliciting his former clients to leave USI and come to Cleary, but only for one year from the date of his termination. During this one-year time period, each of Getman’s clients at USI, if they choose to remain at USI, will have needed to consider the renewal of at least one of their insurance policies, and will have communicated with the USI employee or employees who replaced Getman. This one-year period is more than adequate time for USI to have a fair opportunity to convince Getman’s clients that the service they enjoyed during Getman’s tenure was more the result of the collective efforts of USI’s employees than of Getman’s individual effort. After this one year, with his former clients having seen how their insurance business has been handled by USI without him, Getman should be free again to solicit their business and persuade them that it was his good will they enjoyed, not that of USI.[1]
This Court is cognizant that the Appeals Court has stated, “As a practical matter, the difference between accepting and receiving business, on the one hand, and indirectly soliciting on the other, may be more metaphysical than real ...” Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. at 499. To be sure, when a client calls Getman, there is a thin line between him explaining that he has left USI for Cleaiy and him subtly encouraging the client to transfer his business from USI to Cleary. Yet, there is plainly a real difference between an insurance agent initiating a telephone call or meeting with a former client and the client initiating that contact himself.
It is not solicitation when an insurance agent, prior to or immediately after his termination, notifies his clients, as Getman did here, that he is leaving his insurance company and joining another insurance company, and provides them with his new address, telephone number, and email address. Such notice is common courtesy to clients who an agent has come to know over the years and who have relied on him to *682 handle their insurance needs. The law does not require his clients to learn of his departure from USI only by informal word of mouth or by calling his office at USI to speak with him and learning then that he had earlier left USI’s employ, perhaps weeks or months ago. Written notice is preferable to oral notice, because its content can be carefully worded and it does not invite further communication with the client unless the client initiates that communication.
Nor, if a former client initiates contact with the insurance agent, is it solicitation for the agent to explain in summary terms why he left his former employment and joined his current employer. Nor is it solicitation to describe in general terms the type of work that he will do in his new job and the nature of the work performed by his new company. Such a discussion, however, whether oral or in writing, may potentially constitute solicitation if the insurance agent, not the client, were to initiate this discussion. Moreover, even if the client initiates the discussion, it may be solicitation for the insurance agent to deprecate his former employer so as to diminish the good will it would otherwise enjoy, or praise his new employer or otherwise encourage the client to bring his business there. Based on the limited record here, this Court is preliminarily satisfied that Getman has not engaged in the solicitation of former clients that would constitute a material breach of his obligation to USI.
This Court also finds that the prohibition in the 1989 Employment Agreement barring Getman from retaining or creating any client lists for his own personal use or revealing them to another party is enforceable as a legitimate protection against the disclosure of USI’s confidential information. This Court also preliminarily finds that Getman has breached that obligation by emailing to his personal computer and retaining a list of his former clients at USI, along with their essential insurance information (“the insurance list”), and by retaining his “holiday address list” of USI clients, which includes their names, addresses, telephone numbers, and, occasionally, their email addresses. This Court also finds that Getman used this latter “holiday address list” to notify his USI clients of his departure from USI and his commencement of employment at Cleary as a senior vice-president. This Court, at this time, does not find that justice requires that Getman be sanctioned for his misuse of this confidential information, since it finds that, if he were to have notified his USI clients of his change in employment immediately prior to his termination, he would not have violated either his fiduciary duty to USI or his obligation not to misuse client lists. Since this notification has been sent, there can be no further justification for Getman to retain either his insurance list or his holiday address list. Both are to be returned to USI, along with any and all copies made. If they have been destroyed and can no longer be returned, an affidavit explaining the circumstance surrounding their destruction must be served in their place.
ORDER
For the reasons stated above, this Court ALLOWS the defendants’ motion for a preliminary injunction to the limited extent that it hereby ORDERS that:
1. Until July 13, 2006 or the final adjudication of this case, whichever comes first, Getman is preliminarily enjoined from soliciting his former clients at USI to transfer their insurance business to Cleary or to bring new business to Cleary.
2. In order to ensure compliance with this prohibition against solicitation, Getman shall:
(a) for each communication with a former client at USI, prepare and maintain a log setting forth:
the name of the client;
the date of the communication;
the method of communication (e.g. telephone call or email);
who initiated the communication (Getman or the former client), and
a summary of the substance of the communication.
These communications shall be logged until the time that formal notice is given to USI to transfer the client’s insurance information to Cleary.
(b) segregate and maintain separate accounts' and records of all services and products sold or provided to any former USI client of Getman who became a client of Cleary on or before July 12, 2006.
3. No later than September 9, 2006, Getman shall return the USI “insurance list,” the “holiday address list,” and any other comparable USI client list to USI, along with any and all copies made. If either or both the USI “insurance list” or the “ holiday address list” have been destroyed and can no longer be returned, an affidavit explaining their destruction must be served in their place.
4. Beyond this, the defendants’ motion for preliminary injunction is DENIED.

The one-year bar against solicitation applies only to Getman’s clients at USI, not to members or employees of those clients. Therefore, this Court will not enforce the non-solicitation provision to the extent that it prohibits Getman from soliciting “any member or employee of any trade or professional association, or union, or other group serviced by Hastings-Tapley.” For instance, if Getman handled the insurance business for a labor union, he may not solicit that union to move its insurance business from USI to Cleary, but nothing bars him from soliciting the union’s members to bring their personal insurance needs to Cleary.