CONNORS, Thomas A., J.
This litigation stems from a past employment relationship between the plaintiff, Banc of America Corporate Insurance Agency, LLC (BACIA) and the defendant, Mark Verille. Verille had been hired by a corporation, Fleet Insurance Services (FIS), whose assets BACIA later acquired. Prior to that employment, Verille had had extensive experience in the insurance industry working with corporate clients in the area of employee benefits. After Verille had left his position at BACIA, that company filed this lawsuit alleging that he has breached an agreement the two parties had entered. BACIA seeks in this motion to enjoin Verille from entering business relationships with its former clients.
Factual Background
At the time he was hired by FIS as a “Producer,” Verille entered a written employment contract, which contained, inter alia, a clause labeled “Non-Solicitation of Clients/Customers.” (Exhibit 1 to Plaintiffs Memorandum, ¶4.3.) That clause provided that Verille was not permitted to solicit or attempt to solicit any “then current customers, clients or accounts of FIS” for services similar to those provided by FIS, and it further provided that he was prohibited from entering into any agreements with any third parties to sell such services to those persons or entities. Id. The agreement for Verille’s employment was terminable by either party at any time upon two weeks notice to the other, or in the case of termination for cause by the employer, without notice to its employee Verille. (Exhibit 1, ¶1.2.) The agreement went on to set forth remedies in the event of breach, and it provided that if such breach were on Verille’s part, he was agreeing and acknowledging that FIS would suffer irreparable harm which could not be adequately compensated by money damages. (Exhibit 1, ¶4.6.) That provision contained a provision that Verille was consenting in advance to the entry of an injunction at any time if FIS, in good faith, believed that he was breaching or threatening to breach the agreement. Id.
Verille began to work for FIS in June of 2003, and he remained when FIS was acquired by BACIA during 2005. While Verille was promoted to a different position of Vice President of the Employee Benefits Division, he did not sign any new agreement with BACIA, which is seeking to enforce the provisions of the original agreement with FIS. In August of2006, Verille informed BACIA that he was terminating the agreement to pursue employment with a different entity, USI Insurance Services of Massachusetts, Inc. (USI.)
BACIA claims in its complaint that Verille has breached the agreement by having solicited three of its clients, Kirwan Surgical Products, Inc. (Kirwan), Cubellis Associates, Inc. (Cubellis), and Pella Windows. [1] Verille does not dispute that his new company is involved in providing services to Kirwan and to Cubellis, nor does he dispute that he had spoken to representatives of each of those companies at the time of his departure from BACIA’s employ. He denies, however, that he ever solicited them to shift their allegiance to his new company, and asserts that the two companies made an independent decision to utilize USI after learning of his departure from BACIA. (Affidavit of Verille.) His assertion is supported by an affidavit from officials of both Kirwan and Cubellis which aver that they rather than Verille had initiated the process of moving the business of their respective companies from BACIA to USI. (Affidavit of Scott Kir-wan, Affidavit of Kristen Mobilia.)
Ruling
In order to prevail on its motion, BACIA bears the burden of establishing that it has a likelihood of success on the merits of its claim, that it will suffer irreparable harm in the absence of a grant of injunctive relief, and finally, that its harm without the injunction, will outweigh any harm to Verille if he is subject to the injunctive relief sought. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993). Packaging Indus Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
An agreement which requires a former employee to refrain from certain business enterprises or conduct may be enforced through a grant of injunction, and does not per se constitute an improper restraint of trade. Blackwell v. E.M. Helides, Jr., Inc., 368 Mass. 25, 228-29 (1975), citing Becker College of Business Adm. & Secretarial Science v. Gross, 281 Mass. 355, 358 (1933). However, the determination of whether such a covenant should be enforced through the court’s injunctive authority involves a weighing of the reasonable needs of the former employer for protection against harmful conduct of the former employee against the reasonableness of the restraint imposed on the former employee and the public interest. Blackwell v. Helides, supra, citing All Stainless v. Colby, 364 Mass. 773, 778 (1974).
Examining the issue of likelihood of success on the merits on the claim of improper solicitation, it is not clear that BACIA has established a likelihood of future success at trial. While there is no dispute that Kirwan and Cubellis did move their business to Verrille’s new employer, this does not, of itself establish a solicitation. The affidavits of Verille and especially those of the executives of the two businesses at issue serve to *245 undercut BACIA’s claim of likelihood of success on this issue.
The submissions from the parties do appear to establish that Verille’s new employer is engaged in selling services to Kirwan and Cubellis similar or identical to those furnished previously by BACIA. Based upon this, it is certainly arguable that this would fall within the sweep of the employment agreement’s provision barring Verille from entering any agreement with a third party to provide such services to any of its former clients. Verille argues that this broad proscription contained in the agreement should not be enforced. He cites both its lack of limitation as to any geographical restriction and its duration of two years which he cites as unduly expansive restraints upon both himself and those engaged in competition with BACIA.
The restraint posed by this portion of ¶4.3 does appear to be broad and to implicate the balancing of the protection of BACIA’s reasonable commercial interest versus the impact of its enforcement upon both Verille himself and upon the public interest. There does not appear to be any claim that Verille in his activity with his new employer is exploiting any trade secrets or other confidential proprietary information of BACIA which might give rise to a strong claim for protection though injunctive restraint on his activity. See All Stainless v. Colby, 364 Mass. at 779-80. See also Alexander & Alexander v. Danahy, 21 Mass.App.Ct. 488, 496 (1986) (“Postemployment restraints . . . must be scrutinized carefully to see that they go no further than necessary to protect an employer’s legitimate interests, such as trade secrets or confidential customer information”). It is true that protection of business good will would also constitute a legitimate business interest of an employer such as BACIA in seeking enforcement of a covenant restricting competition directed against a former employee. Id. However, in the present case, the submissions of the parties call into question whether the goodwill which BACIA might claim in its past business customers Kirwan and Cubellis in fact existed in itself or its predecessor FIS or instead emanated from Verille himself. (Affidavits of Kirwan and Mobilia.) In these circumstances, likelihood of success in the enforcement of the provisions of ¶4.3 is uncertain. See Sentry v. Firnstein, 14 Mass.App.Ct. 706, 708 (1982).
Even were BACIA in a stronger position on the threshold issue of likelihood of success on the merits, its claim of irreparability of harm is not compelling. The submissions reflect that BACIA is a major corporation with a significant client base. Its complaint against Verille alleged impropriety and resulting loss from his dealings with just three clients, a number later whittled down to two. In these circumstances, it is difficult to see why BACIA would not be able to have an adequate remedy in damages in the event that it could establish at trial that it had suffered compensa-ble wrong resulting from its former employee’s conduct. See Westinghouse Broadcasting, Inc. v. New England Patriots Football Club, Inc., 10 Mass.App.Ct. 70, 74-75 (1980). It further must be remembered that against any such claim of irreparable harm to BACIA must be weighed the impact upon Verille and his interests in pursuing his livelihood in the area of employee benefits — a career which he had pursued both before and after his period of employment with FIS/BACIA — were an injunction to enter. The weighing of the claim of irreparable harm on these facts is not favorable to BACIA.
Order
The motion of the plaintiff seeking a preliminary injunction is Denied.

At argument, BACIA conceded that while Pella Windows has ceased being its client, its supposition that this resulted from activities on Verille’s part was based upon inaccurate information, and it is dropping that portion of its claim against him.