McIntyre, Frances A., J.
Plaintiff Empirix, Inc. moves for a preliminary injunction prohibiting its former sales engineer and defendant, Alexy Ivanov, from working for a competitor. On February 23, 2010, Mr. Ivanov entered into an agreement with Empirix entitled Agreement Regarding Non-Competition, Non-Solicitation, Developments and Non-Disclosure (the “Non-compete”). Empirix seeks to enforce this Non-compete against Alexy Ivanov now that he is employed by its alleged competitor, NetScout Systems, Inc.
The preliminary injunction is ALLOWED.
BACKGROUND
When asked to grant a preliminary injunction, the court initially evaluates the moving party’s claim of injury and chance of success on the merits, based on submitted documents and a brief hearing; it is a preliminary determination. While not finding facts at this juncture, this court predicts that after trial, the following factual assertions will be found to be true.
In the 2010 agreement, Mr. Ivanov agreed that he would not directly or indirectly “engage as an . . . employee ... anywhere in the United States, Europe or any other jurisdiction in which [Empirix] is then conducting business (the ‘Territory”), with any firm, corporation, or other legal entity or business that develops, designs, produces, markets, sells or renders products or services that are competitive with those developed, designed, marketed, sold or render by [Empirix] (provided that, if the Employee is engaged solely in a business unit of [Empirix]—currently Hammer XMS, Contact Center or Lab—the referenced products and services shall be those of the business unit) during the period of employment . . .” and a non-solicitation provision that he would not “divert or take away, or attempt to divert or to take away, the business or patronage of any of the clients, customers or accounts, or prospective clients, customers or accounts, of [Empirixl which were contacted, solicited or served by [Mr. Ivanov] while employed by Empirix].”
Momentarily leaving aside the considerable technical context of this case, suffice it to say for a start that Mr. Ivanov is a brilliant engineer who historically worked only in systems involving the voice monitoring of land-line telephone networks and Voice over Internet Protocol, otherwise known as VOIP networks. Since 2001, he was employed by Empirix or a predecessor entity fTeradyne) in this niche. In June 2010, Empirix acquired Mutina, and a new field of endeavor; Mutina provided the IPXPlorer system which was a data network monitoring, rather than telephone network monitoring. Mr. Ivanov was quickly commissioned into the Mutina enterprise. Empirix sent him and his wife to Italy in late summer 2010 to become expert on IPXPlorer in order that he might train others and assist in selling the new product. The preliminary discovery has demonstrated that he, indeed, attained a level of considerable proficiency in the new technology, viz., he was able to suggest innovations necessary “to do business in North America.”
*512 On his return from Italy in November 2010, Mr. Ivanov was engaged in demonstrating the new IPXPlorer product. He had intimate knowledge of the new IPXPlorer system which was Empirix’s next advance in the marketplace. His work with IPXPlorer moved Mr. Ivanov into the mobile broadband arena. Within days of his return from Italy, he sought employment at NetScout.
In March 2011, Mr. Ivanov announced his intention to go to work for NetScout. NetScout specializes in data network monitoring products, the veiy field which Empirix was entering via Mutina’s IPXPlorer while Mr. Ivanov was working there. The timing of these moves is such that the parallels between the field occupied by IPXPlorer and NetScout appears to be more than coincidental. It appears to this court that Mr. Ivanov took full advantage of the opportunity with Mutina in order to advance his own, not Empirix’s market position. In employing him, NetScout agreed to pay Mr. Ivanov for three months should he find himself in this position, i.e., with a non-compete being enforced against him.
The companies describe themselves as providing “service assurance and application and network performance management solutions” (NetScout’s SEC filing) and Empirix as providing “network diagnostics and analysis . . . quality of service . . . and . . . analytics . . . for operators” (Empirix website). Before 2010, as is clear from the English Affidavit, the two companies could coexist in providing service to the same customer, but no longer. Accepting the revised affidavit of Peter Bolduc as true, it is patent that NetScout and Empirix have competed, at least since the acquisition of Mutina, for the same contracts in the same markets. While there are distinctions to be drawn between the companies, competing in the same market for the same business is per se evidence that NetScout in 2010 and 2011 is a competitor of Empirix in the mobile broadband market.
DISCUSSION
The standard is familiar:
[W]hen asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party’s claim of injury and chance of success on the merits. If the judge is convinced that failure to issue the injunction would subject—the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party . . . Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.
Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).
This court is satisfied that a Non-compete was signed, there was consideration, and that NetScout qualifies as competitor. The court will turn to the defendant’s reasons as to why the Non-compete ought not be enforced.
I. Mr. Ivanov argues the Non-compete is unenforceable
Defendant argues the agreement is now void, because when he went to Italy to work with Mutina he was obligated to train other engineers, evaluate them and his compensation structure changed. He claims his job changed and thus the Non-compete no longer applies. Empirix’s explanation makes more sense. A temporary assignment in Italy to learn new skills and mentor other sales engineers was entirely consistent with his role as a sales engineer. His title remained the same. The temporary deployment did not invalidate the Non-compete.
Mr. Ivanov also claims that Empirix’s move into mobile broadband affected his own mobility, in that the field covered by the Non-compete was altered; he argues a new agreement was necessary. This court is not so persuaded; this is not the case of a smaller corporation being acquired and enlarging its field of endeavor. Getman v. USI Holdings Corp., 19 Mass. L. Rptr. 679 (Mass.Super.Ct. 2005). In the Getman situation, the corporate acquisition decision was far remote from the employee. Here, Mutina was acquired and Mr. Ivanov was offered an opportunity to enter the new field of endeavor. He took the opportunity knowingly and benefitted from it. Presumably, he could have declined to enter the broadband or data network field and another employee would have gone to Italy. Preliminarily, this court is satisfied that Mr. Ivanov knowingly and willingly assented to enlarging the scope of his own work on behalf of Empirix.
It seems likely that Mr. Ivanov, at some point while in Italy, realized he could use the Mutina deployment to gain himself an entry into the new field in which he had a professional interest. In early 2011, Empirix sought for Mr. Ivanov to sign a new agreement but he deferred doing so, claiming to object to the language. He was contemplating the move to NetScout and avoided signing it before he jumped ship. He did not indicate an unwillingness to sign the agreement which would have signaled Empirix that it needed to press Mr. Ivanov with an ultimatum. There is no unfairness in requiring a long-term employee, in good faith, to be straightforward: either sign the agreement or declare an unwillingness to sign. To lull the employer into inaction by silence and then accuse the employer of a lack of diligence is just not cricket.
Defendant argues the Agreement is unenforceable because the Territory is too broad; this is not persuasive. This area of expertise in which Mr. Ivanov has chosen to distinguish himself is global communication network monitoring. Obviously, the Territory covered by the Noncompete is enormous because Empirix’s reach is that large. Empirix is not a local services company seeking to prevent its employee from working anywhere. The Territory is tailored to the area covered by Empirix and is not unreasonable.
It is observed that the length of time (one year) that the non-compete is to be enforced is reasonable in this case. Kroger v. Stop and Shop Companies, Inc., 13 Mass.App.Ct. *513 310, 318. Particularly in the field of global telecommunications, changes and advances are constant and Mr. Ivanov will lose his ability to harm Empirix’s business interests with time. It took three months for him to become proficient with IPXPlorer. One year for Empirix to recoup its loss of a key engineer and to deprive a competitor of confidential information is reasonable.
Mr. Ivanov claims the Non-compete restriction is ambiguous. There is no strength in this argument. The contract clearly states what it forbids: “engagfing] as an . . . employee . . . with any firm, . . . that develops, designs, produces, markets, sells or renders products or services that are competitive with those developed, designed, marketed, sold or render by [Empirix].” This provision was clear enough to Mr. Ivanov so that he warned NetScout before he went to work there. It pre-emptively fashioned an agreement that would generously protect him if he was ordered not to work for it. No one was confused about the provisions of Mr. Ivanov’s Non-compete.
II. Mr. Ivanov claims Empirix has unclean hands
Mr. Ivanov personally avers that he was provided with confidential information of NetScout by Empirix, and that equiiy does not favor grant of the injunction. At this juncture, I am unwilling to credit Mr. Ivanov’s description of misconduct by Empirix. Basing a decision on that equitable defense will require a fuller examination of the evidence at trial.
III. Mr. Ivanov claims there is no showing of irreparable injuiy
Mr. Ivanov argues that it is not inevitable that Empirix’s secrets will be disclosed. An order to Mr. Ivanov to not disclose is proposed as plaintiffs remedy.
This strikes the court not as a legal question but a factual one. Losing Mr. Ivanov at the critical stage of rolling out a new product undoubtedly affected Empirix’s newest offering in the marketplace. Taking himself to a competitor could cripple the new venture’s prospects. Mr. Ivanov possessed Empirix’s plan for development of its new product, information on its weaknesses, sales strategies, internal Empirix organizational information, and customer information. Immediately upon his resignation, Mr. Ivanov informed NetScout of his customers and particulars of each.
Mr. Ivanov’s knowledge of the competing product will inevitably or inadvertently surface during Mr. Ivanov’s employment with NetScout, because of the timing of Empirix’s recent arrival on the mobile broadband stage. He will make decisions for his competing product based on information he holds about IPXP-lorer, and even without formal disclosure, thereby benefit NetScout. Under these circumstances, a court order not to disclose will not enforce Empirix’s effort to protect itself from unfair competition.
This court is satisfied that Empirix has demonstrated that it is likely to prevail on the merits of this dispute on the Non-compete and non-solicitation clauses of the contract which Mr. Ivanov signed. Moreover, it has established that it would suffer irreparable harm if the injunction were not granted.
Mr. Ivanov will surely suffer from enforcement of the Non-compete. However, the court is satisfied that he knowingly signed the agreement not to compete, understood its terms and took a professional risk to avoid it. NetScout has been protective of him. With his skills, he will secure other employment quickly; he is a man in demand. Thus, there is no inequity in obligating him to comply with the contract he signed. The Motion for a Preliminary Injunction is allowed.
CONCLUSION
For the foregoing reasons, the Motion for a Preliminary Injunction is ALLOWED.