Gordon, Robert B., J.
The Court has reviewed the parties’ submissions in connection with Plaintiffs Motion for Preliminary Injunction, and considered the arguments of counsel advanced at the hearing held on March 24, 2016. It is the conclusion of the undersigned that plaintiff Elizabeth Grady Face First, Inc. (“Elizabeth Grady” or the “Company”) has demonstrated neither a likelihood of success on the merits of its claims, nor a risk of immediate and irreparable injury absent injunctive relief, nor a balance of relative harms militating in favor of the issuance of a preliminary injunction. For each and all of these reasons, Plaintiffs Motion for Preliminary Injunction shall be DENIED.
DISCUSSION
Applying the familiar three-part test of Packaging Industries. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980), the Court has no difficulty concluding that Elizabeth Grady has failed to establish an entitlement to the extraordinary relief it seeks.
LIKELIHOOD OF SUCCESS ON THE MERITS
Elizabeth Grady seeks to enforce a covenant not to compete contained in the Employment Agreement of three former employees who used to work at a Company-owned skin care salon in Burlington, Massachusetts. These three employees, the individual defendants, served as trained aestheticians and massage therapists (in the case of Ms. Garabedian and Ms. Quezada) and as a salon manager (in the case of Ms. Roberts). At hearing, the parties stipulated that Ms. Roberts does not, in fact, presently work in a competitive capacity, and Elizabeth Grady thus voluntarily withdrew its preliminary injunction motion as to her. The remaining two defendants each executed a form Employment Agreement furnished to them by Elizabeth Grady.[1] These Employment Agreements provide, in pertinent part, that:
(1) All “Confidential Information” of Elizabeth Grady (defined to include product development plans, marketing strategies and customer lists) and all “Documents” (defined to include all records and files of the Company, whether in hard copy or electronic media) belong exclusively to Elizabeth Grady and may not be copied, taken, disclosed or used in any way following the termination of employment (Employment Agreement, at paras. 1-2.);
(2) For a period of one year following termination of employment, the employee(s) may not solicit or otherwise encourage customers of the Company to cease or diminish their relationship with the Company, such as by seeking to persuade them to *325 conduct with a third party any of the business activities such customers conduct or could conduct with Elizabeth Grady (Employment Agreement, at para. 4.); and
(3) For a period of one year following termination of employment, the employeefs) may not compete against Elizabeth Grady, such as by working for or providing services on behalf of a business competitive with that of the Company, anywhere within a 25-mile radius of any location where the employee^) performed services on behalf of the Company. (Employment Agreement, at para. 3.)
In the present case, there is no evidence that defendants Garabedian or Quezada have copied, taken, disclosed, or used in any manner any Confidential Information or Documents belonging to Elizabeth Grady. Indeed, the record scarcely suggests that either of these retail-level employees enjoyed meaningful access to sensitive information and materials of this nature.[2] There is likewise no evidence that any of the defendants have solicited Elizabeth Grady customers; and the Court observes that Elizabeth Grady does not even allege that any of its clients have begun to patronize the Sofia E. Day Spa where the two individual defendants now work. Plaintiffs entire contract action thus rests on its attempted enforcement of the Employment Agreement’s 25-mile non-competition restriction—a restriction the defendants have evidently violated by going to work for a skin care salon and day spa in Lynnfield, Massachusetts, approximately nine miles from Elizabeth Grady’s Burlington shop.[3]
It is well settled that covenants not to compete shall only be enforced to the limited extent they serve a legitimate business interest of the employer. See, e.g., Marine Contractors Co. v. Hurley, 365 Mass. 280, 287 (1974). Although Elizabeth Grady has recited in its pleadings the familiar set of legitimate business interests our courts have recognized as justifying enforcement of a covenant not to compete (viz. the protection of trade secrets, confidential business information, and customer good will, see Boulanger v. Dunkin’ Donuts, Inc., 442 Mass. 635, 641 (2004)), the record contains no evidence beyond conclusory generalities persuading the Court that any of these interests are in fact present in the case at bar.
Elizabeth Grady runs a retail salon, in which it sells commercialized personal care products and provides on-site skin care treatments, massages, and related health and beauty services to customers. The Company alleges that it has trained the defendants in its skin care service techniques, client management procedures, and such other business methods as salon dress codes, gift certificates, appointments, and sales promotions. Elizabeth Grady has not, however, cited any evidence to suggest that these matters amount to anything more than routine job training for a retail service-provider. There is no evidence, or even a common-sense inference, that any such information is truly proprietaiy to Elizabeth Grady; no evidence that it is maintained in confidence; and no evidence that it is not broadly known among Company employees and customers alike. Although the Employment Agreements summarily assert that product development plans, marketing initiatives and other business strategies of Elizabeth Grady represent confidential information protected against unauthorized use and disclosure, there is no evidence whatsoever that any of the defendants actually enjoyed access to such information and are thus in a position to exploit it competitively.
Elizabeth Grady insists that employees like the defendants have been trained in “the Elizabeth Grady way,” and that it is such education and experience that Garabedian and Quezada are now trading on in their work for Sofia E. The Court, however, is unable to discern any aspect of the “Elizabeth Grady way,” so called, that can be considered confidential or propri-etaiy to the Company. Indeed, as plaintiffs counsel conceded at hearing, most of this training occurs at Elizabeth Grady Schools, institutions that teach skin care and massage methods to employees and non-employees alike. If Elizabeth Grady is choosing to impart its professional teachings to persons who are free to compete against the Company as soon as they leave the classroom, such training cannot rationally be considered the kind of trade secret, confidential or proprietaiy information whose protection compels enforcement of a covenant not to compete. See Chiswick v. Constas, No. 2004-311, 2004 WL 1895044, at *3 (Mass.Super. June 17, 2004) (Kane, J.) [18 Mass. L. Rptr. 104] (“Information is not confidential if competitors could obtain the same information from a third party, or the information is obtainable from publicly available sources”).
In the final analysis, the individual defendants are three retail service providers who worked in a storefront skin care salon. They were naturally trained to perform the functions of aestheticians and massage therapists, and to do so in accordance with Elizabeth Grady’s preferred methods. But to enforce a non-compete against employees possessed of no more than this kind of conventional job knowledge and skill is to stretch the reach of a restrictive agreement far beyond the bounds of what Massachusetts law approves. See J.T. Healy & Son v. James A. Murphy & Son, 357 Mass. 728, 740 (1970) (general knowledge, experience, memory and skill constitute assets belonging to the employee); Dynamics Research Corp. v. Analytic Scis. Corp., 9 Mass.App.Ct. 254, 267 (1980) (“an employee on terminating his employment may carry away and use the general skill or knowledge acquired during the course of the employment”).
The undersigned reacts similarly to Elizabeth Grady’s insistence that the Company has significant customer good will that would be jeopardized if the defendants are permitted to continue working for a *326 competing personal care spa located nine miles away. To be sure, Elizabeth Grady enjoys a business reputation in the skin care industry, and its products and services draw clients to its salons on a repeat basis. What is not evident, however, is that any of the defendants either have or will likely exploit such good will in their own work on behalf of the Sofia E. Day Spa. There is thus no evidence that any of the defendants have ongoing service relationships with Elizabeth Grady clients; no evidence that any of the clients whom the defendants have served are repeat customers of the Company; no evidence that the defendants have done anything at all to call attention to their prior association with Elizabeth Grady; and no evidence that any Elizabeth Grady customers who patronized the Company’s Burlington shop have since taken or are threatening to take their business to the Sofia E. Day Spa in Lynnfield.
Even if there were evidence in the record to substantiate that regular Elizabeth Grady clients served by the defendants had begun to migrate to the Sofia E. Day Spa, such evidence would still not (standing alone) permit a reasonable inference that the Company’s good will is being improperly appropriated. See Sentry Ins. Co. v. Firnstein, 14 Mass.App.Ct. 706, 708 (1982) (“The objective of a reasonable noncompe-tition clause is to protect the employer’s good will, not to appropriate the good will of the employee”). To the contrary, all such evidence would show is that certain customers feel sufficient personal loyalty to their massage therapist and/or skin care provider to warrant traveling a greater distance to access their services. Elizabeth Grady’s facilities, products, promotions and the like remain fully available to such customers in Burlington; but if the customers choose to avail themselves of the particular services being offered by the defendants, then the conclusion the Court is left to draw is that the true good will that exists in this business lies in favor of the employees. This Court has so held in the plainly analogous context of the hairdressing industry. See Joymark v. Lockward, No. 12-0291-C (Mass.Super. May 15, 2015) (Gordon, J.) (in hairdressing industry, good will logically belongs to the stylist); Lunt v. Campbell, No. 07-3845-BLS, 2007 WL 2935864 (Mass.Super. Sept. 24, 2007) [23 Mass. L. Rptr. 145] (holding good will belonged to hairdresser rather than her salon employer; noting that clients’ willingness to travel significant distance to obtain services from salon’s former employee “tends to suggest that the client’s good will runs to” the employee rather than the employer).
In sum, Elizabeth Grady has not presented sufficient (indeed, any) evidence that demonstrates its covenant not to compete safeguards a legitimate business interest. There being no evidence that the defendants are possessed of or exploiting bona fide trade secrets, confidential information, or customer good will belonging to the Company, it is evident that Elizabeth Grady’s true motivation is to thwart ordinary competition from conventionally skilled service providers. This is not permissible. See Boulanger v. Dunkin’ Donuts, supra, 442 Mass, at 641 (“A covenant not to compete designed to protect a party from ordinary competition does not protect a legitimate business interest”). See generally R. Beck, Negotiating, Drafting and Enforcing Noncompetition Agreements and Related Restrictive Covenants §2.2(b) at 2-70—2-73 (5th ed. 2015) (collecting cases).
IMMEDIATE AND IRREPARABLE HARM
Low likelihood of success on the merits aside, Elizabeth Grady has failed to demonstrate that it faces immediate and irreparable harm if preliminary injunc-tive relief is denied. Thus, Elizabeth Grady has identified no trade secrets or confidential business information that the defendants have used or threatened to use. The Company has likewise introduced no evidence that Burlington clients have been solicited or are for other reasons taking their business to the Sofia E. Day Spa. Finally, the Court observes that the defendants have been conducting business at Sofia E. since December 2015, nearly four months, without incident. Elizabeth Grady’s delay in initiating litigation, together with its failure to present evidence of any concrete harm inuring to it during this extended period, belie the notion that it faces immediate and irreparable injury in the absence of injunctive relief. See, e.g., Alexander & Alexander v. Danahy, 21 Mass.App.Ct. 488, 494-95 (1986).
BALANCING OF HARMS
As a final point, the Court observes that a balancing of the relative harms faced by the parties in this matter tilts decidedly against the issuance of preliminary injunctive relief. The risks of harm cited by Elizabeth Grady (a large corporation with dozens of stores) if the defendants remain in business range from speculative to non-existent.[4] The countervailing harms faced by the individual defendants from an eight-month shutdown of their fledgling business would, of course, be crippling. Numerous courts that have confronted this very balancing have declined to issue injunctions against competition. See, e.g., Sentient Jet, Inc. v. Lambert, 2002 WL 31957009, at *7 (Mass.Super. Nov. 18, 2002) (van Gestel, J.) [15 Conn. L. Rptr. 500] (Defendant’s business is not sufficient threat to plaintiff to warrant harm to defendant of closing it down); Neeco, Inc. v. Computer Factory, Inc., 1987 WL 16161, at *3 (D.Mass. Aug. 19, 1987) (risk of harm to former employer was “far less” than harm of job loss to former employee: employee’s “interest in earning a living and supporting his family far outweighs [former employer’s] speculative interest in protecting its investment in its employees or its monetary interest in stifling adverse competition”).
CONCLUSION AND ORDER
For each and all of the foregoing reasons, plaintiff Elizabeth Grady Face First, Inc. has not demonstrated an entitlement to equitable relief in accordance with *327 Mass.R.Civ.P. 65. Plaintiffs Motion for Preliminary Injunction, therefore, is DENIED.

 Although Ms. Garabedian’s signed contract has not been located, the preponderant evidence indicates that she signed a version of this instrument at the outset of her employment and it has since been mislaid. Ms. Garabedian has not suggested that she in fact refused to execute the Employment Agreement required of all other Elizabeth Grady personnel, but simply maintains that she lacks a current recollection of having signed this contract. In these circumstances, the Court proceeds from the premise that the parties in fact had an agreement, and merely lack the documentary evidence of same.

 A single sentence in the McEvoy Affidavit states that all three defendants were “familiar with the Company’s price lists, customer lists, operations manual and esthetic training manuals.” (McEvoy Aff. at para. 3.) No additional evidence, however, suggests that such materials were maintained in confidence; and, regardless, a basic familiarity with these documents hardly suggests an ongoing knowledge thereof absent proof that the defendants retained or copied same.

 In point of fact, Garabedian purchased all of the assets and good will of Sofia E., a salon that had been in continuous operation since 2004. Garabedian is today the retail business's sole full-time employee, and Quezada works for the salon as a part-time aesthetician.

 The record does not even contain evidence that Sofia E. Day Spa, situated nine miles from Burlington as it is, is in any actual sense a market competitor of Elizabeth Grady. No evidence is presented, for example, to show that the two salons are soliciting the same customer base or that the shops share even a single client. At hearing, counsel for Elizabeth Grady acknowledged that the Company staffs as many as 19 separate salons within the 25-mile radius surrounding its Burlington shop, at least two of which are situated more closely to Burlington than Sofia E. These facts alone strongly suggest that a spa located nine miles away from Burlington is not serving the same client market.